STATE OF IOWA, appellee, v. PHYLLIS L. J. JONES, appellant.

No. 50311.

830

FEBRUARY 6, 1962.

REHEARING DENIED APRIL 2, 1962.

E. F. McEniry, of Creston, for appellant.

Evan L. Hultman, Attorney General, William J. Yost, Assistant Attorney General, and Marshall F. Camp, Union County Attorney, for appellee.

THORNTON, J.—Defendant, a young, divorced mother, about 20 years old, was charged with robbery contrary to section 711.3, Code of Iowa, 1958, and convicted of the included offense, larceny from the person, section 709.6, Code of Iowa, 1958. She appeals, urging insufficiency of the evidence, and the confession, Exhibit No. 2, was inadmissible.

I. The undisputed facts are, defendant was drinking in the

afternoon of October 26, 1960, with her ex-husband, John Jones. Defendant called Reed Donovan, the victim of the larceny, between six and seven p.m. to take her home. He picked her up. They stopped to buy cigarettes. He asked her to drive. She drove up Cottonwood Street (Creston, Iowa). She stopped the car saying she had smoke in her eyes. In a short time two men came out of the weeds. Donovan was severely beaten by them and robbed of some $1500, $1100 in fifty-dollar bills. His right hand was broken in three places and 53 stitches were taken in his head. Donovan recognized John Jones, but not the other man. Donovan testified defendant was passed out immediately after the beating and, "Maybe she was drunk or something" at the time she stopped the car. Defendant testified she was intoxicated at the time she got into the car, and that she saw two shadowy figures come toward the car, "and I don't remember what happened after that." At the point where defendant stopped at a stop sign before driving onto Cottonwood Street, defendant says she started to turn toward town when Reed (Donovan) said to go the other way (onto Cottonwood Street). Donovan testified he did not remember who mentioned driving up Cottonwood Street. The above are all of the pertinent facts not based on defendant's oral statement given about 9:30 p.m. on the same day and a written confession, Exhibit No. 2, given about 1 a.m. the following morning. Another undisputed fact is that $1150 of the stolen money was found in the automobile of Martin Ellis in Cheyenne, Wyoming. The information leading to this recovery of the money came from defendant's confession. There is no other evidence introduced at the trial connecting Ellis with the crime.

It is apparent the foregoing evidence is insufficient to sustain a conviction beyond a reasonable doubt. The facts and inferences in defendant's oral statement and written confession are necessary to sustain a conviction.

Defendant's oral statement, as testified to by the sheriff, is as follows:

"She said that two weeks before, she had talked to her ex-husband about Reed Donovan. She said they planned to roll Reed Donovan, and she was to get one third; she told us that

about 9:30, and we got her to sign the statement about three hours later."

Defendant's alleged confession, Exhibit No. 2, is as follows:

"I, Phyllis Jones, having been warned that what I say may be used against me, voluntarily state:

"About two weeks ago, my former husband, John William Jones, was at my apartment at Little Hollywood, Creston, Iowa, and I mentioned that Reed carried a lot of money and flashed it around.

"He said it would be a good thing to roll him, and that if they got any money from him he would give me a third of it.

"Today, October 26, John and Monte Ellis came to my apartment about twelve o'clock. I had just gotten through feeding my son, Mike who is three years old.

"I asked Monte later when we were at Hazel's Tavern if he could do such a thing as roll Reed and he did not answer. * * * [Then there are statements about taking her son to her parents, going to the liquor store, and being in three taverns.]

"John asked if I was going out with Reed tonight. I said I might, but that Reed was probably mad at me. John said 'Why don't you call him.' John asked me where we would go. I said we usually drive around by the lake and he asked what lake. I told him we go by McKinley lake, and through to Highway 25 and that sometimes we would park by the Graceland cemetery on Cherry Street.

"I think it was about six o'clock when I called Reed from Kelley's. He told me he would meet me at Wallace's store and I walked up to Wallace's from Kelleys leaving John and Monte there.

"I got in the car with Reed and we drove over to the South side to get some cigarettes at a station (Colonial) and must have given John and Monte time to drive out to the lake and hide their car. I did not know where they would put it or where they might see us.

"After Reed drove us near the park, I asked him if I could drive and he let me drive. I drove around the lake and then went west and turned up Cottonwood street. When we had gone some distance up Cottonwood I had smoke in my eyes and stopped. We talked a little bit and were over on the right-hand

side of the car together. Two shadows appeared at the right front window and windshield. I am certain that they were John and Monte.

"I think I may have passed out as I do not remember the beating, but when I came to, Bud Morrow was pulling my dress. I had blood on my arms and on one leg.

"The men were gone and we did not see their car.

"Bud took us to the hospital in his car, and I stayed in the car while they went into the hospital.

"In Witness whereof I have hereunto set my hand to this and the preceding page at 12:30 A.M., October 27, 1960. * * *."

The defendant signed the confession and the sheriff and assistant chief of police signed as witnesses.

■ From the undisputed facts, the oral statement, and Exhibit No. 2 the jury could find beyond a reasonable doubt defendant planned with her ex-husband and Ellis for her to arrange to have the victim at a certain place at a certain time. The two men would rob Donovan and divide the money with defendant. The knowledge Reed Donovan carried large amounts of cash could have been given by defendant innocently, and it is also true she could have given the information of where Mr. Donovan and she would stop innocently. But from her statement that they "planned to roll Reed Donovan" the jury could properly find she took part in the arrangement. An inconsistent incident is, defendant being asked to drive and suggesting they drive toward town. However, if the jury believed she planned the robbery as she stated it would not be improper for the jury to draw the conclusion defendant knew Mr. Donovan's habits and desires sufficiently well to know he would suggest the usual route or parking place, and her suggestion was merely to mislead Mr. Donovan and protect herself.

Defendant does not cite authority bearing on the insufficiency of the evidence. Her argument is that she too was an innocent victim of the two men. This of course would have been a permissible inference for the jury to draw, but it is certainly not the only one. There is conflicting testimony and different inferences may be drawn therefrom, the verdict is binding on us. State v. Register, 253 Iowa 495, 112 N.W.2d 648; and State v. Poffenbarger, 247 Iowa 552, 74 N.W.2d 585.

834

II. Defendant's contention the confession, Exhibit No. 2, is inadmissible was in no manner presented to the trial court. Her argument here apparently is a conviction cannot be based on an alleged involuntary confession whether or not the admissibility is raised in the trial court, that the due process clause is violated. This is not in accord with our previous holdings. Failure to object to the admissibility of evidence in the trial court waives any error therein and its admissibility is not reviewable here. State v. Walters, 244 Iowa 1253, 1261, 58 N.W. 2d 4, 346 U. S. 940, 74 S. Ct. 380, 98 L. Ed. 427; State v. Mauch, 236 Iowa 217, 17 N.W.2d 536; and State v. Ostby, 203 Iowa 333, 210 N.W. 934, 212 N.W. 550. Constitutional questions cannot be raised for the first time on appeal. State v. Walters, 244 Iowa 1253, 58 N.W.2d 4, 346 U. S. 940, 74 S. Ct. 380, 98 L. Ed. 427; and State ex rel. Seeburger v. Johnson, 204 Iowa 150, 214 N.W. 594.

III. We have recently commented on the failure to properly present claimed errors to the trial court. State v. Pullen, 252 Iowa 1324, 110 N.W.2d 328; and State v. Kramer, 252 Iowa 916, 109 N.W.2d 18. We there point out rules of procedure are not merely technical, they lay down an orderly process for trials, necessary to avoid interminable confusion. In the two cited cases we did examine the assigned errors and gave the warning such would not be our practice. In those cases we were requested to examine the record and assigned error pursuant to section 793.18, Code of Iowa, 1958; here we are not so requested.

Section 793.18 does require us to examine the record without regard to technical errors or defects which do not affect the substantial rights of the parties. But we have held this statute inapplicable where objections to evidence have been waived. State v. Ostby, 203 Iowa 333, 342, 210 N.W. 934, 212 N.W. 550.

IV. It has long been the Iowa practice to afford the defendant as a matter of right, on the question of the admissibility of a confession, either oral or written, a hearing in the first instance before the trial court out of the presence of the jury. It is the duty of the trial court to receive preliminary evidence, including cross-examination of the State's witnesses and evidence on behalf of the accused upon the competency of the confession,

and determine the question of admissibility. State v. Fidment, 35 Iowa 541, 542; State v. Hofer, 238 Iowa 820, 28 N.W.2d 475; and State v. Case, 247 Iowa 1019, 75 N.W.2d 233. The test is whether or not the confession is voluntary. State v. Archer, 244 Iowa 1045, 58 N.W.2d 44, and State v. Case, supra. The confession, like any admission, is presumed to be voluntary. The burden rests on the defendant to go forward with the evidence to show the involuntary character. State v. Hofer and State v. Case, both supra; and State v. Mullin, 249 Iowa 10, 85 N.W.2d 598. If the court finds the confession to be involuntary as a matter of law on such hearing it is excluded. But where the evidence is such as presents a conflict on which reasonable minds can draw different conclusions, all of the evidence bearing on the confession and its voluntariness is then submitted to the jury under proper instructions. State v. Fidment, State v. Hofer, State v. Case, State v. Archer, and State v. Mullin, all supra. This hearing is waived by failure to request it. State v. Bisanti, 233 Iowa 748, 9 N.W.2d 279.

 V. The trial court properly instructed the jury a confession will not sustain a conviction unless accompanied by other evidence the crime has in fact been committed. And the confession could not be considered by them unless they found beyond a reasonable doubt the statements contained in the alleged confession were in fact made by the defendant and were made by the defendant voluntarily uninfluenced by fear, deception, promise or artifice. The instruction is in accordance with correct constitutional standards. Rogers v. Richmond, 365 U. S. 534, 81 S. Ct. 735, 5 L. Ed.2d 760.

 VI. Though there is actually nothing before us, an examination of the confession and the evidence bearing on its voluntariness does not disclose a situation in which the trial court could have held, or we can hold, as a matter of law the confession is involuntary.

The only authority relied on by defendant is Leyra v. Denno, 347 U. S. 556, 561, 74 S. Ct. 716, 719, 98 L. Ed. 948, 952. The facts in Leyra are so different from those in this case the case is of little or no help. In Leyra the accused was held by the police incommunicado into the fourth day, and subjected to intermittent questioning during which time he had shown no dis-

position to confess or make a statement. After attending his parents' funeral (the victims of a hammer murder of which the accused was convicted), on the fourth day the accused was allowed an hour and a half sleep and questioning was resumed by a state-employed psychiatrist. The accused had been promised a physician to treat his sinus condition. The techniques of the psychiatrist were used for an hour and a half to break the accused's will in order to get him to confess. The confession given to the psychiatrist was not in issue, having been held involuntary by the state court. Three subsequent confessions given in a space of five hours after the one given to the psychiatrist, on which the conviction was based, were held to be parts of one continuous process. The Supreme Court said, "We hold that use of confessions extracted in such a manner from a lone defendant unprotected by counsel is not consistent with due process of law as required by our Constitution."

According to the testimony of the sheriff here, the defendant, within a half hour after the officers started questioning her, said they "planned to roll Reed Donovan" and she was to get one third. The defendant in her testimony does not deny making this statement, nor does she say it was in any manner involuntary. She simply did not testify concerning it. No issue is presented on this oral statement. She did testify she did not agree with anyone to rob Reed Donovan. Bearing on the written confession the sheriff testified, "* * * and we got her to sign the statement about three hours later." (Later than the oral statement) On cross-examination the sheriff testified, "When she was questioned, you could smell liquor."

The defendant's entire testimony concerning the taking of Exhibit No. 2 is as follows:

"* * * the deputy sheriff came to the hospital, and took us to the police station. The first time I looked at the clock it was 8:45. Then the sheriff, policeman Turner and the County Attorney questioned me until about one o'clock in the morning. Mr. Turner put the bloody clothes on the table and it made me sick; those bloody clothes and what I had drunk made me sick. I had a headache. I had not eaten and I was sick. I signed the statement so I could get out of there."

Defendant testified she was intoxicated when she got into Mr. Donovan's car. She said she does not remember what happened after the men came upon the car. Mr. Donovan said, "Maybe she was drunk or something", referring to the time she stopped the car. Her mother testified defendant had been under a doctor's care for a nervous condition for the past year.

The testimony bearing on defendant being sick at the time of signing the confession came wholly from her. Her condition of intoxication is shown to some degree before and at the time of the robbery, how long this condition lasted is not indicated. The only compulsion shown is the placing of bloody clothes on the table. She alone testified to this. It is neither denied nor affirmed by the sheriff or the policeman.

There is no showing defendant was under arrest or being questioned as an accused at the time she gave the first oral statement. Certainly she was in a position to be a witness. She would naturally be the starting point of police inquiry. She certainly was a suspect as soon as she made the oral statement. The police to some degree apparently acted on this information enough to go to her home and search it, finding no one there. How long they were gone and whether or not the questioning was continued during the period of their trip to her home is not shown. The information on which she was tried was filed October 29, 1960, the crime was committed on October 26, 1960. The transcript shows a bench warrant was issued October 31, 1960, for her arrest. The officer's return shows the sheriff executed the warrant by arresting the defendant on the same date and states, "and have her in custody." Whether she was then taken into custody or had been since the night of the 26th does not appear. There is no showing defendant was or was not advised of her right to counsel or what she said or signed might be used against her except as appears in Exhibit No. 2. She did not say she requested counsel.

The practice of the Federal courts of excluding confessions made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate is not applicable here. Culombe v. Connecticut, 367 U. S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037; Gallegos v. State of Nebraska, 342 U. S. 55, 72 S. Ct.

141, 96 L. Ed. 86; and State v. Archer, 244 Iowa 1045, 58 N.W. 2d 44. But as pointed out at the time defendant was first questioned she was in the best position to know the facts. Her questioning for the first half to three quarters of an hour is within the area of legitimate police inquiry. See Culombe v. Connecticut, supra. After her oral statement she was subject to arrest. The only evidence of pressure applied by the officers is the placing of bloody clothes on a table, evidently in front of her. The sheriff did testify, "and we got her to sign the statement about three hours later." This is only evidence of request, not of such force as to destroy defendant's will. Actually her oral statement, if believed, was sufficient to sustain a conviction. Though, were the subsequent signed confession involuntary, the conviction could not stand.

We have not found a case with similar circumstances where it has been held the confession was involuntary as a matter of law. One fact that stands out which cannot be disputed is the defendant was held for three hours after making her oral statement. The type of questioning or the length of time the bloody clothes were displayed is not shown nor is the nature or extent of the clothes shown. Though defendant's testimony is undisputed we cannot take it as true. Her credibility is for the jury. Another fact that is apparent from the face of the record is that Exhibit No. 2 does not conform to the proven facts in one particular. The statement in Exhibit No. 2 is, "I [defendant] asked him if I could drive and he let me drive." Mr. Donovan testified, "* * * I let her drive," and "I wouldn't deny that I asked her to drive." This is one indicium of involuntariness. The confession does conform to the proven facts in other respects. The evidence indicates the officers had no theory of the case until talking with defendant.

The confession, under the circumstances disclosed in the evidence, presents a question of fact for the jury. State v. Mullin, 249 Iowa 10, 85 N.W.2d 598; State v. Case, 247 Iowa 1019, 75 N.W.2d 233; State v. Hofer, 238 Iowa 820, 28 N.W.2d 475; State v. Archer, 244 Iowa 1045, 58 N.W.2d 44; State v. Bisanti, 233 Iowa 748, 9 N.W.2d 279; Culombe v. Connecticut, 367 U. S. 568, 81 S. Ct. 1860, 6 L. Ed.2d 1037; Reck v. Pate, 367 U. S.

433, 81 S. Ct. 1541, 6 L. Ed.2d 948 ; and Rogers v. Richmond, 365 U. S. 534, 81 S. Ct. 735, 5 L. Ed.2d 760.—Affirmed.

All JUSTICES concur.