JOHN H. LESSENHOP, administrator of estate of Lyle M. Ford, deceased, appellant, v. OPAL E. NORTON, administrator of estate of Donald Walter Norton, deceased, et al., appellees.

No. 52190.

(Reported in 153 N.W.2d 107)

September 19, 1967.

John D. Randall and Fisher & Pickens, both of Cedar Rapids, for appellant.

Tom Riley, of Cedar Rapids, and William Klotzbach, of Independence, for appellees Norton.

James W. Crawford, of Cedar Rapids, and Wirt P. Hoxie, of Waterloo, for appellee Hopson.

LARSON, J.—In an action for damages by decedent's administrator for defendants' alleged negligence in the operation of their automobiles, a cross-petition for damages by one defendant, and a counterclaim by another, the jury returned a verdict for all defendants. Only plaintiff appeals.

This accident occurred on Highway No. 150 approximately three miles north of Midway in Linn County, Iowa, on May 21, 1964, shortly after 10 p.m. The asphalt covered concrete pavement, 24 feet 3 inches wide at this point, runs approximately north and south. The weather was clear and the pavement dry. It appears that plaintiff's decedent, Lyle M. Ford, killed in the accident, was driving a 1954 Tudor Mercury sedan northward, followed by defendant Walter B. Hopson in a 1959 Pontiac sedan. Defendant Donald Walter Norton, also killed in this accident, was driving a 1962 Ford Galaxie sedan southward when the Ford and Norton cars collided head on. Hopson, unable to stop, crashed into Ford's car, upsetting it and knocking it from the pavement.

Plaintiff's petition, in three divisions, sets out a claim against Norton in Division I, a claim against Hopson in Division II, and a claim against Norton and Hopson jointly in Division III.

Subsequent to the verdict, the trial court overruled plaintiff's motion for a new trial, and this appeal followed.

Assigned as error are (1) the trial court's failure to compel Norton's counsel to refrain from courtroom references to "blood alcohol" tests as requested in plaintiff's Motion in Limine (2) its acceptance of testimony by defendant's expert, L. J. Burianek, who had insufficient basis for the opinion expressed, and (3) its requirement that the jury consider the case beyond the normal working hours required of jurors in Linn County, Iowa. A more detailed statement of the relevant facts as they bear upon the respective assigned errors will be made hereinafter.

I. Having been informed during a pretrial conference that the issue of driver consumption of alcoholic liquor would be injected into the case, plaintiff's counsel filed a motion in

limine premised on the ground that such evidence would be immaterial and any references thereto before the jury would be highly prejudicial to plaintiff's case. In this motion plaintiff alleged the only basis upon which such an issue (driver-drinking) could be raised was the fact that there is a statement on the certificate of death which read "Blood Alcohol Value 82.5 mg percent", signed by Percy G. Harris, M.D., Linn County Medical Examiner; that said certificate is inadmissible to show blood alcohol value or cause of death and that "there is no basis upon which there can be any proof of blood alcohol value", it being hearsay, and that "there has been an absolute failure to comply with the provisions of Sections 321B.4 and 321B.5 of the Iowa Code Annotated." It further alleged such prohibition was necessary to protect plaintiff "from the prejudicial conduct and the effect of the suggestions, inuendoes, whether by statements made to the jury, questions to the jury during voir dire, or questions to any witnesses containing such suggestions * * *." In his prayer plaintiff asked that any references be prohibited as to driving impairment or the consumption of alcoholic beverage "based upon the certificate of death hereinabove referred to *or* based upon any matter related to blood alcohol value of the decedent Lyle M. Ford." (Emphasis added.)

Pursuant to a hearing on this motion, the court ordered defendant "in examining the jury and in making opening statements shall not make any reference to what a death certificate may show in this respect (blood alcohol level). But if Mr. Riley has independent evidence of 80 point 2 or whatever it may be, he's entitled to show it and I cannot restrict him from telling on opening statement in effect what he thinks the defendant Norton's evidence is going to prove in this respect."

At that time plaintiff's counsel called the court's attention to the provisions of chapter 321B of the Code and made reference to certain requirements to be met before reference may be made in a trial to a blood alcohol sample taken from a dead person. At that time plaintiff did not press for a broader order.

The court then clarified its ruling, saying to defendant Norton's counsel: "If you know in your mind that you have evidence which you believe to be admissible, independent of

the death certificate that will establish that fact (blood alcohol level), you are free to make reference to the amount of alcoholic content in the blood of the deceased Ford." The court, however, said it would keep the order open for amendment "if by any chance counsel for plaintiff convinces me that my order should be broader, before such time as Mr. Riley does address the jury."

Apparently Mr. Riley was of the opinion that the report of the county medical examiner, which is not the same as a death certificate, was admissible evidence in a civil case and, knowing that there was a notation on the back of the executed form pertaining to Lyle Ford's death, reciting among other things, "Ford blood alcohol was 82.5 mg. percent", proceeded to refer to Ford's use of alcoholic beverages in voir dire examination and in his opening statement to the jury.

The court was not sure of appellees' conclusion as to the admissibility of this evidence, but indicated much depended upon the proof submitted. When defendants' counsel sought to introduce testimony of the medical examiner and the county attorney and to introduce the "Report of Investigation by Medical Examiner" executed by Doctor Harris, the vital issue of this controversy became evident, i.e., what, if any, matter appearing on such a report must be excluded on objection under the provisions of section 339.9?

II. Chapter 339 of the 1966 Code relates to the appointment, qualifications, jurisdiction, and duties of a county medical examiner. Section 339.4 provides he shall be notified of the death of a person who died "a. From violence. * * * g. In a suspicious, unusual or unnatural manner." Although no issue is raised herein as to whether the county medical examiner had jurisdiction of this matter where it clearly appeared the plaintiff died from injuries resulting from an automobile collision, the trial court had some doubts that it extends beyond a determination of the cause of death.

Section 339.5 makes it clear the examiner's duties are to inquire as to "the cause and manner of death" and file his findings with the county attorney and the criminal investigation division of the public safety department. It would seem his investigation is directed toward evidence of a crime and is

not the same as an accident report filed by an investigation officer with the public safety department under section 321.266 of the Code. Did this investigation or report disclose any evidence of a crime? We do not believe it did, although, as appellant concedes, this was not a natural death. Nevertheless; it is appellant's principal contention that, because of the statement of alcohol analysis on the back of the report, it could not be received in evidence, and that witnesses could not be interrogated as to this report until it was shown that the report contained no hearsay evidence barred by the provisions of section 339.9 of the Code.

Section 339.9 provides: "Reports of investigations made by the county medical examiner or his assistants, and records and reports of autopsies made under the authority of this chapter, shall be received as evidence in any court or other proceedings, *except* that statements by witnesses or other persons and *conclusions upon extraneous matters are not* hereby made admissible. * * * ." (Emphasis added.) It further provides that the person preparing a report or record may be subpoenaed as a witness in a civil case by any party to the cause. It does not attempt to pass on the admissibility of reports containing extraneous matters or define extraneous matters. Obviously, then, that admissibility is to be governed by other well-established rules of evidence which the court must apply when timely and proper objections are made.

The trial court recognized this rule when he advised counsel in chambers that "before any results of a blood test analysis can be admitted in this case, * * * the party seeking to introduce such evidence must first lay a proper foundation." It further suggested some of the foundation requirements the party seeking to introduce such evidence must meet. However, as we understand it, it did not limit the requirements to those enumerated. There may be others.

At this point we are faced with two questions of major importance to this decision: (1) Did appellees lay a proper foundation for the admission of evidence of blood alcohol tests, and (2) was a timely and proper objection made to the introduction of this evidence?

■ III. Before any result of a blood test analysis can be admitted in any civil or criminal case, the party seeking to introduce such evidence must first lay a proper foundation for its admission. Unless waived, this foundation must show that the specimen was taken by a duly authorized person using proper sterile equipment, that it was properly labeled and preserved, that its care and transportation were proper, and also the identity of persons processing it so as to give the opposing party the opportunity to cross-examine as to the care and procedure used in the test. See State v. Weltha, 228 Iowa 519, 292 N. W. 148; Bruyere v. Castellucci (R.I.), 200 A.2d 226; Apodaca v. Baca, 73 N. M. 104, 385 P.2d 963; Utah Farm Bureau Ins. Co. v. Chugg, 6 Utah 2d 399, 315 P.2d 277; 51 Michigan Law Review 72, 79.

In State v. Weltha, supra, this court rejected evidence of a blood analysis because the specimen passed through the hands of several unidentified persons, was improperly kept in places available to the public, and because the one taking the specimen was without authority to take the specimen from the unconscious patient. There we held that the trial court erred in receiving in evidence, over timely objection, the blood sample and the testimony of alleged experts based thereon.

■■ In the case at bar appellant did not seriously contend that the medical examiner had no authority to take a blood sample from persons killed in accidents, but predicated his objection on the inadmissibility of this report containing the findings and conclusions thereon. Appellant asserts, although there was testimony that the examiner labeled the specimen and placed it in the hospital refrigerator with general instructions to analyze, there is no showing as to who made the analysis and the report. Thus, he contends there could be no cross-examination to verify the certainty or correctness of this report, and it was inadmissible.

We are not satisfied the foundation laid was sufficient to permit the acceptance of this report. The examiner did not find Ford's death resulted from driving while intoxicated or while under the influence of intoxicating liquor. His findings and conclusions as to any blood test did not appear relevant or material to his report. If not material, any such reference

was extraneous to the report and the injection of evidence as to blood alcohol through the medium of this report was prejudicial and should have been rejected. Apparently there was no showing as to who received, tested or reported the findings on the sample of blood taken from plaintiff, and in this regard the results of the test could not be admitted into evidence. The proper foundation had not been laid, and there is no contention it had been waived.

In Apodaca v. Baca, supra, in holding a proper foundation had not been laid for the admission of a blood' analysis, the court observed the failure to show who had possession from May 23 to May 27, and in what manner or condition the specimen was delivered to the laboratory, was a vital defect.

In Bruyere v. Castellucci, supra, which also involved an automobile accident, the court held it was error to permit the state toxicologist to testify as to the results of his analysis of a blood specimen purportedly taken from the body of the defendant's decedent. In that case there was a failure to trace the specimen from the time of taking until the time of trial, failure to identify some of the persons involved therein, and no evidence produced outside the test that decedent had consumed any alcohol at all. The court, in rendering its decision, cited our Weltha case with approval.

Appellees contend section 321B.4 applies here and that its requirements were met and shown by the examination of Doctor Harris. Chapter 321B clearly relates to the authority to take blood tests when a person is suspected of driving while intoxicated, and provides no rules for admission of these tests into evidence in cases such as we have here. In any event, upon challenge the results of such tests must be shown competent, relevant and material by the party making the offer.

■ Before blood test analysis may be introduced into evidence, it would appear that the party seeking introduction must show (1) that the blood was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist or registered nurse designated by a licensed physician (4) that the instruments used were sterile (5) that the blood taken was properly preserved or kept (6) labeled (7) if transported or sent, the method and

procedures used therein (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons under whose supervision the tests were conducted be established. Items 1, 2, 3, 4, 5 and 6 apparently were shown. Items 7, 8 and 9 were not.

It is our conclusion here that appellees failed to disclose who made the analysis and the report to the examiner, and that a proper foundation had not been laid for the introduction of this blood test analysis. The court was fully aware of this objection and should have sustained it.

 IV. Objections to the introduction of evidence are addressed to the court and are not addressed to the jury. Metropolitan National Bank v. Commercial State Bank, 104 Iowa 682, 74 N. W. 26. See also 22 Iowa Law Review 609. It is said therein at page 610 that the function of the objection " 'is first to signify that there is an issue of law, and, secondly, to give notice of the terms of the issue.' " It is sufficient if it calls to the court's attention the element of inadmissibility or incompetency involved. An objection may be, and indeed often should be, made in chambers to avoid prejudice. It may be reversible error to compel an attorney to make his objection in the presence of the jury. Johnson v. Kinney, 232 Iowa 1016, 1023, 1024, 7 N. W.2d 188, 144 A.L.R. 997. Under such circumstances, unless the objection is made and decided outside the jury's presence, there could be reversible error, for the jury would then be made aware of the alleged confession. State v. Johnson, 257 Iowa 1052, 1062, 135 N. W.2d 518; State v. Jones, 253 Iowa 829, 834, 113 N. W.2d 303; State v. Holland, 258 Iowa 206, 138 N. W.2d 86, 90. In the interest of procedural convenience objections are not usually made outside the presence of the jury, but obviously those made in chambers of which a record is made are as valid and proper as those made in open court.

The record before us discloses that during recess and in chambers the court heard arguments on the admissibility of the results of Ford's blood test analysis. This was prior to any attempt made to introduce the medical examiner's report, Exhibit H. At that time the court recognized the "crucial question in this lawsuit" and ruled that plaintiff should have

complete freedom to make proper voir dire examination of witnesses at anytime in order to try to establish, if he could, "that proper procedures were not followed, that an insufficient foundation exists." At that time the court was fully advised that any attempt to introduce such evidence or produce witnesses before the jury who would attempt to prove the blood alcohol content of Ford's blood would prejudice plaintiff's case.

Plaintiff requested the opportunity to examine Doctor Harris and the county attorney, whom defendant intended to call as witnesses, outside the presence of the jury. Plaintiff advised the court as to his objection when he stated "that any matter relating to blood alcohol *is extraneous matter* and therefore not admissible under any circumstances * * *" (emphasis added), that "the same is entirely incompetent, irrelevant and immaterial." This objection, it seems, was overlooked by the court or was considered insufficient. In any event, it was not sustained.

At the conclusion of the conference in chambers, the court said, "if you want me to exclude any evidence or rule that a witness is not to answer a question, you are going to have to * * * lodge proper objection when the question is asked." Plaintiff's request for an examination of Doctor Harris out of the jury's presence, to determine whether his testimony was admissible, was also overruled by the court, with an announcement that the request was too late, that it had discretion in this area, and that this issue should have been resolved in connection with the motion in limine. It ruled plaintiff had waived his right to do that by not seeking to establish the incompetency of the examiner's report, along with his other motion before trial commenced. We cannot agree with either ruling. The limine motion related to a death certificate and, until defendants attempted to use the examiner's report to prove alcohol consumption, plaintiff did not anticipate that issue. In any event, he sufficiently objected to that evidence before it was offered and asked for an examination out of the jury presence as soon as it became evident how defendant planned to produce evidence, other than the death certificate, of plaintiff's recent use of alcoholic beverages.

We conclude the trial court was well and timely advised of the objection and improperly refused to permit that requested examination. When it permitted the examination before the jury, prejudicial error occurred. It was also error to require plaintiff to repeat his objections in open court. Repeated objections need not be made to questions calling for the same type of proof if a proper objection had been made when the adverse party first made the offer. Metropolitan National Bank v. Commercial State Bank, supra; 22 Iowa Law Review 613, and cases cited therein.

V. Appellant, in his second assignment, contends the court erred in permitting L. J. Burianek to testify as to the location of the point of impact between the Ford and Norton automobiles because he did not arrive at the scene until the car driven by one of the parties had been moved, and the other had been struck by a third car and had landed on its side a considerable distance from the area of impact. He contends this testimony by an alleged expert was based upon obscure and unidentifiable skid marks, gouges and other observations made after traffic had passed over the area for about an hour and a great share of the debris had been cleaned up and removed.

No serious contention is made as to the qualifications of Burianek as an expert, but appellant maintains correctly that the admissibility of expert opinion evidence is dependent on the factual foundation laid. An expert opinion lacking a proper foundation is, of course, of no value and is not admissible. Sufficient and timely acquired data must appear upon which a judgment can be made, and, if that is not shown, the opinion is usually designated as incompetent. 32 C. J. S., Evidence, section 546(63), page 267. Also see 66 A. L. R.2d 1051 for the statement that it must appear that the expert giving the opinion had an opportunity to investigate the scene reasonably soon after the accident and had sufficient evidence to form a reasonable opinion based on his observations.

Appellant cites three cases in support of his contention that Burianek's observations were too late and inadequate. Hackman v. Beckwith, 245 Iowa 791, 805, 64 N.W.2d 275, 283, 284; Ficke v. Gibson, 153 Neb. 478, 45 N. W.2d 436; and Arnett

v. Dalton, 257 S.W.2d 585 (Ky.). Also 8 Am. Jur.2d, Automobiles and Highway Traffic, section 958, page 505.

Here Burianek testified his hour or hour-and-a-half examination at the scene, within an hour after the accident, disclosed certain skid marks, "brights" and gouges, and located them by measurements. The trial court ruled these examinations were a sufficient basis for his opinion. In Hackman v. Beckwith, supra, we considered testimony of a witness who examined the marks on the pavement after an accident and opined as to the point of collision, and held the trial court did not abuse its discretion in accepting that opinion.

In Brower v. Quick, 249 Iowa 569, 577, 88 N. W.2d 120, we stated the rule applicable here. We said the general rule "is that testimony or evidence as to tire or skid marks in the vicinity of the accident is admissible, that is, to the extent of allowing the witness to describe the marks and the circumstances under which he observed them, leaving it to the jury to draw its own opinion and conclusion as to what, if anything, the evidence indicates or tends to prove." (Citations)

We also said there: "The receipt of opinion evidence, lay or expert, rests largely in the sound discretion of the trial court." (Citations) We pointed out considerable leeway is allowed in this field of evidence for the reason that no matter how the opinion question is phrased or formulated, it remains an opinion which the jury is at liberty to reject.

In the case at bar there was evidence that Norton came over the center line and hit Ford, which contradicts Burianck's opinion that the point of impact occurred in the southbound lane. Hopson, the only eyewitness, first said Norton appeared to come into the northbound lane and strike the Ford car, and later said he could not be sure due to the explosion, dust and flying debris when these cars came together. There was evidence the Norton car came to rest in the southbound lane facing east about 3 or 4 feet from the pavement center line, and certain scratch marks on the pavement were made when it was pulled apart and removed from the traveled portion of the highway. We have carefully reviewed this testimony and find no abuse of the court's discretion in admitting this testimony.

VI. In his final assignment appellant contends the trial court erred in requiring the jury to consider the case beyond normal working hours, and requiring the jury to return to a closed courthouse on a Saturday to have the case finally submitted. We find no merit in this assignment and, in view of the fact that it is not likely to occur in the retrial of this matter, will give it only passing attention.

After a trial lasting from Tuesday through Friday, the jury was required to return to the courtroom on Saturday although the courthouse had been closed on that day by action of the board of supervisors on the mistaken idea that it could do so under the law at that time. While there were no jury affidavits filed herein, it appears there were some complaints by a juror or two because they were required to deliberate into Sunday before being discharged. While we do not recommend Sunday deliberation as a rule, there is no law known to us, or cited, which prohibits Sunday deliberation by a jury. Section 605.18, Code 1966, seems to permit it, saying a court may give instructions to a jury then deliberating on Sunday, may receive a jury verdict on Sunday etc. Also see 83 C. J. S., Sunday, section 51, page 878, reciting deliberation by a jury on Sunday is not illegal.

The court believed both it and some of the jurors had previous assignments requiring their presence in court on Monday and, under the circumstances, felt this case should be pursued to its conclusion without a weekend delay. We cannot say, under these circumstances, any abuse of its discretion to do so was shown.

VII. Having found reversible error in Divisions III and IV, this cause must be reversed and it is remanded for a new trial.—Reversed and remanded.

All JUSTICES concur except JUSTICE LEGRAND, who takes no part.