**STATE of Iowa, Appellee,**

v.

**Calvin L. MILLER, Appellant.**

**No. 55386.**

Supreme Court of Iowa.

Feb. 21, 1973.

Daniel J. Spellman, of Spellman, Spellman & Spellman, Perry, for appellant.

Richard C. Turner, Atty. Gen., Robert D. Jacobson, Asst. Atty. Gen., Stanley R. Simpson, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

Defendant, Calvin L. Miller, was charged by county attorney's information with the crime of operating a motor vehicle while under the influence of an alcoholic beverage contrary to section 321.281, The Code, 1971. Following arraignment, defendant entered a plea of not guilty. Trial to a jury resulted in a verdict convicting him of the offense charged. He appeals from judgment imposing sentence.

The offense under section 321.281 involves two elements: intoxication of the driver and his act of operating a motor vehicle while so intoxicated. It is not limited to operation on a public highway. State v. Valeu, 257 Iowa 867, 870, 134 N.

W.2d 911, 913; State v. Heisdorffer, 171 N.W.2d 513, 514 (Iowa 1969).

The issue of defendant's intoxication at the time of his arrest is not raised in this appeal.

Defendant and Donavan Fallstone began drinking beer together at about 2:30 p. m. May 28, 1971. They continued their consumption of beer throughout the afternoon and early evening while driving about the town of Woodward and the surrounding countryside. William Spence testified that at approximately 5:30 p. m. and again at 6:00 he had observed defendant riding in an automobile owned and driven by Fallstone. He further stated that at 7:00 p. m. he saw Fallstone driving defendant's automobile with defendant slumped over on the passenger's side of the front seat.

Approximately 7:30, Fallstone and defendant were involved in one-car accident which was witnessed by no one.

Clay North, a highway patrolman, testified he arrived at the accident scene about 7:45. There, be observed Fallstone wandering about the area and discovered defendant sitting in the back seat of the car. Both appeared to be intoxicated. He was unable to elicit from the men who was driving the automobile when the accident occurred. An ambulance was called and both Fallstone and defendant were taken to the hospital where North continued to interrogate them in the presence of Donald Hart, a Boone police officer.

Defendant testified he had no recollection of having driven his automobile after 10:30 a. m. May 28 or the circumstances surrounding the accident and subsequent hospitalization. Miller believed the amount of alcohol he had drunk and medication taken prior to the accident for the treatment of alcoholism accounted for his poor memory.

At the close of the State's evidence, defendant filed a motion for directed verdict

alleging the State had failed to produce any substantial and sufficient evidence defendant was the operator of his motor vehicle at the time of the offense charged. Therefore, the prosecution had failed to prove an essential element of the crime of operating a motor vehicle while under the influence of an alcoholic beverage. The motion was overruled. Motion for directed verdict was renewed at the close of all evidence and was again overruled.

Following the verdict, defendant filed motion for new trial. It was overruled.

In his brief, defense counsel has combined those assignments of error which are closely related in seven divisions. These divisions will be considered other than in the order argued.

I. In regard to defendant's allegations for directed verdict stated supra, the record discloses substantial evidence was presented through testimony of highway patrolman Clay North and officer Donald Hart that defendant was operating the motor vehicle when it went into the ditch. However, the problem is whether such evidence was competent in view of defendant's challenge to its admissibility as shown by the record presented.

Defendant directs one division of his argument to this issue. He maintains the court committed reversible error by allowing North and Hart to testify as to statements purportedly made by Fallstone who was not called and did not appear as a witness at trial.

Defendant also asserts it was error for the court to permit North to relate a conversation the witness claimed to have had with defendant.

We deal first with defendant's challenge to the testimony of North and Hart insofar as it relates to statements allegedly made by Fallstone. Defendant contends this evidence was inadmissible hearsay and its admission denied him the opportunity to cross-examine the utterer.

Some background describing the manner in which the problem arose might be helpful.

Patrolman North, the State's second witness, testified he investigated the accident. He arrived at the scene sometime between 7:30 and 7:45, observed defendant and Fallstone and recalled seeing Max Hall there. The following is a part of North's direct examination:

"Q. Did you have any conversation with the defendant there? A. I asked him who was driving the car and nobody answered, and outside of that and trying to get out of them what happened, I got nothing out of them what happened, I got nothin'.

"Q. Where was the other guy? A. He was out walking around.

"Q. Did you talk to him? A. Yeah, I cornered him and got him by—."

At this point defendant's counsel made this record: "Your Honor, I'd like to object at this time and take up a matter of law with the court on this matter concerning the testimony of the officer." The court granted the request and excused the jury.

A record was made of the proceedings at the hearing which followed. Defense counsel inquired of the county attorney if he proposed to have North testify to any statements made by Fallstone relative as to who was driving the car. When advised this was the county attorney's intention, defendant made an objection which was extended by argument. In essence, defendant's objection was that any question which called for a recital of any statements made by Fallstone to patrolman North or any other witness was incompetent as calling for hearsay; such witnesses were being asked to repeat statements made by Fallstone who was not in court subject to cross-examination.

The State resisted the objection contending the proposed statements were admissi-

ble under an exception to the hearsay rule as a part of the res gestae and for the further reason the objection was premature. We will have more to say about this later.

The court overruled defendant's objection and the direct examination of North was resumed in the presence of the jury as shown by the following record:

"Q. Did you have any conversation or was there any talk by the defendant himself there at the scene of the accident? A. Just the cussin' and carrying on; that is just about all.

"Q. Did you ask him any questions? A. I asked him if he was the driver of the car.

"Q. What was his answer? A. He wouldn't answer me.

"Q. Do you know who the driver of the car was? A. Yes.

"MR. SPELLMAN: Your Honor, I would—

"A. Mr. Miller.

"MR. SPELLMAN: —I'd object to that, Your honor, I think the witness is not competent to answer that question; he did not observe the accident himself.

"THE COURT: He was investigating and the investigating officer. He may answer, the answer may stand."

North indicated he had had a conversation with the other person involved in the accident and whom he identified as Donavan Fallstone but did not get much information at the scene of the accident from Fallstone or defendant.

His direct examination continued in this fashion:

"Q. All right, what was said there at the scene of the accident? A. I didn't get too much out of either of them at the scene; they wouldn't talk to me, they just didn't want anything to do with me, and neither of them would tell me who was driving.

"Q. Did they tell you there at the scene who was driving? A. No, but in the hospital *they* did.

"Q. Did both of them go to the hospital in the ambulance? A. Yes." (Emphasis supplied).

We turn to that portion of Hart's testimony on direct examination pertinent to the assignments being considered in this division. Donald W. Hart, a Boone police officer, testified as a result of a call from North he proceeded to the Boone County hospital, arriving about ten minutes before North. Defendant and Fallstone were already at the hospital.

The following record is a part of his direct examination:

"Q. Did you have occasion to * * * [talk] or converse with the other fellow involved in the accident? A. Yes, he at different times was standing in the hall, in the doorway of the emergency room; he was in and another time he was in a room adjoining this one, directly South. Patrolman North—I didn't myself speak to him, but I was in the room when Patrolman North talked to him, and asked him if Cal was driving the vehicle, and he said, 'Yes.'

"MR. SPELLMAN: Your Honor, I again object; this is pure hearsay and highly prejudicial, and for the reasons that I previously stated during Officer North's testimony, and Mr. Fallstone is not here, subject to cross examination and subject to oath, and such statements are hearsay and I object for the reasons previously stated as highly prejudicial to the Defendant.

"THE COURT: Overruled."

We return to the State's contention urged in support of the court's ruling that the proposed testimony of North and Hart as to statements purportedly made by Fallstone was admissible as a part of the res gestae.

■ After the hearsay objection was urged by defendant, the burden was then

upon the State to show that it came within the range of some specific exception. See Ladd, Objections, Motions and Foundation Testimony, Vol. 43 Cornell L.Q. 543, 553 n. 39 (1958) where the author says:

"The burden of proving the grounds of an objection is ordinarily not upon the opponent; whether he objects on the ground that the original of a document is not produced, or that an attesting witness ought to be called, or that a dying declarant was not conscious of impending dissolution, the burden of establishing the preliminary facts essential to satisfy any rule of evidence is upon the party offering it. The opponent merely invokes the law; if it is applicable to the evidence, the proponent must make the evidence satisfy the law." See also 1 Wigmore on Evidence, (Third Ed.) section 18(E).

■ The State failed to sustain its burden of establishing that the offered testimony was admissible as a part of the res gestae. Max Hall, a farmer living near the scene of the accident, testified as a State's witness that North had told Fallstone and Miller at the scene, " 'Well, I'll charge you both then; there has got to be one of you driving the car,' and I can't recall that anybody ever admitted to driving the car." The statement of Fallstone received in evidence came as a result of a conversation North had had with Fallstone sometime later at the hospital. The record fails to disclose the length of time intervening between North's statement at the accident scene and his inquiry of Fallstone at the hospital. Certainly, North's inquiry of Fallstone was calculated to obtain an answer favorable to the State.

In Gibbs v. Wilmeth, 261 Iowa 1015, 1024–1025, 157 N.W.2d 93, 98–99, this court referred to the controlling standards in testing admissibility of res gestae statements and expressed our view of the important considerations in dealing with admissibility. We approve again what was said there. In light of that statement of

law we conclude Fallstone's statement at the hospital does not qualify as res gestae.

■ The other aspect of the State's resistance to defendant's objection that it was premature is untenable, It must be conceded both counsel anticipated that North's answer would include a recital of statements by Fallstone not in defendant's presence and hearing bearing on the operation of the vehicle by Miller when it was driven into the ditch. The moment defense counsel became aware the State was attempting to introduce incompetent testimony in the way of hearsay statements through North, counsel immediately took steps in urging its exclusion to make clear the claimed defective feature of the offered evidence—that it was hearsay.

Hearsay is defined in rule 801, Proposed Rules of Evidence for United States Courts and Magistrates in this manner:

"(a) Statement. A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

"(b) Declarant. A 'declarant' is a person who makes a statement.

"(c) Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

"* * *."

In State v. Smith, 195 N.W.2d 673, 675–676 (Iowa 1972) we noted that the omitted portion of the quoted rule deals with statements which are not hearsay.

The Advisory Committee in commenting on subdivision (c) said: "The definition follows along familiar lines in including only statements offered to prove the truth of the matter asserted. McCormick § 225; 5 Wigmore § 1361, 6 id. § 1766."

■ The State in written brief and argument seeks to uphold the ruling of the

trial court by contending the error was not preserved since defendant's objection was made after the answer in the two instances set forth and no motion was made to strike the answers. This would be true if it were not for defendant's objection made in chambers that any question which called for a recital of any statements made by Fallstone to patrolman North or any other witness was hearsay, a situation which the State completely ignores in arguing its contention.

The following pronouncement in Lessenhop v. Norton, 261 Iowa 44, 53, 153 N.W. 2d 107, 112–113, is pertinent here:

■ "Objections to the introduction of evidence are addressed to the court and are not addressed to the jury. Metropolitan National Bank v. Commercial State Bank, 104 Iowa 682, 74 N.W. 26. See also 22 Iowa Law Review 609. It is said therein at page 610 that the function of the objection ' " is first to signify that there is an issue of law, and, secondly, to give notice of the terms of the issue." ' It is sufficient if it calls to the court's attention the element of inadmissibility or incompetency involved. An objection may be, and indeed often should be, made in chambers to avoid prejudice. It may be reversible error to compel an attorney to make his objection in the presence of the jury. Johnson v. Kinney, 232 Iowa 1016, 1023, 1024, 7 N.W.2d 188, 144 A.L.R. 997. Under such circumstances, unless the objection is made and decided outside the jury's presence, there could be reversible error, for the jury would then be made aware of * * * [the challenged evidence]. State v. Johnson, 257 Iowa 1052, 1062, 135 N.W.2d 518; State v. Jones, 253 Iowa 829, 834, 113 N.W.2d 303; State v. Holland, 258 Iowa 206, 138 N.W.2d 86, 90. In the interest of procedural convenience objections are not usually made outside the presence of the jury, but obviously those made in chambers of which a record is made are as valid and proper as those made in open court."

Defendant pointed out to the court and counsel in his initial objection reasons why testimony of any witness repeating Fallstone's statements should be excluded. The trial court by overruling defendant's objection made it abundantly clear that any similar objections to like evidence would be overruled. Defense counsel was entitled to assume the court would continue to make the same ruling.

■ Once a proper objection has been urged and overruled, counsel is not required to make further objections to preserve his right on appeal when a question is asked raising the same issue subsequently in the course of trial. Ladd, Objections, Motions and Foundation Testimony, 43 Cornell L. Q. at 545.

"The repetition of an objection is needless where the same or similar evidence, already duly objected to, is again offered; the prior objection suffices, if the Court's ruling has indicated that an objection to such evidence will definitely be overruled." 1 Wigmore on Evidence, (Third Ed.), section 18(A)(4). See also McCormick on Evidence, (Second Ed.), section 52, page 118; Ladd, Common Mistakes in the Technique of Trial, 22 Iowa L.Rev. 609, 612–617; Metropolitan N. Bk. v. Commerc. S. Bk., 104 Iowa 682, 74 N.W. 26.

The State's contention is written brief and argument is without merit insofar as it asserts error was not preserved.

Defendant's objection in chambers was adequate to preserve error in the admission of Hart's testimony recounting a conversation between North and Fallstone at the hospital which Hart overheard.

The court erred in admitting this testimony.

II. In another division a problem closely related to the one just considered is raised by defendant's assertion it was error to permit North to testify he knew defend-

ant was driving the automobile at the time of the accident.

■ It will be recalled that on direct examination North had testified when asked if he had any conversation with defendant at the accident scene that he got nothing out of either defendant or Fallstone as to what had happened; he had not witnessed the accident and had no personal knowledge as to who was driving. It is obvious the witness did not have personal knowledge of the matter about which he was questioned. The answer must of necessity have depended on what some third party had told the witness. The trial court had been alerted by defendant's prior objection in chambers that he was contending any testimony relative to statements made by Fallstone to North or Hart should be excluded as hearsay.

What we have said in division I in defining hearsay and the timeliness of defendant's objection urged in chambers applies to this problem.

■ The State is faced with another problem in seeking to sustain admission of North's testimony in this respect. The record, set out in division I supra, discloses while counsel was in the middle of repeating his prior objection to the question, the witness "shot in" the answer "Miller." Although defendant did not move to strike the answer on the ground counsel had not had sufficient time to finish his objection before the answer came in, the court's ruling that the witness "may answer, the answer may stand" obviates any necessity of such motion to preserve the error assigned. The court had clearly indicated that any such motion to strike would be overruled.

It was error to admit the statement.

III. We have elected to treat separately a contention raised by defendant in the first division of his argument wherein he contends the court erred in admitting a conversation had between North and defendant at the hospital.

North was being interrogated on direct examination as to the events occurring after his arrival at the hospital. We set out the record:

"Q. What was the conversation that you had with the defendant? A. As night went on, I asked him—that his partner had said that he had been driving, and—let's see, his partner said he had been driving, and he said, 'Yeah, what about it,' or something to this effect.

"MR. SPELLMAN: Your Honor, I'd object again at this point as to any statements made by Fallstone—are hearsay and not admissible in evidence; they relate to an essential element of the offense charged, operation of a motor vehicle—and under the hearsay rule, the witness is not qualified to comment on any statements made by Mr. Fallstone, and for the other reasons stated in my previous objection concerning the hearsay rule.

"THE COURT: You are wrong; he may answer.

"MR. SIMPSON: Answer.

"He said, 'Yeah, what about it?', and then a little later as we were getting—putting the cast on him, I remember I said, 'Won't you ever learn not to drink and drive?', and he said, 'I guess not.'"

In the first place, defendant's statements offered against him are not hearsay on the theory their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. See McCormick on Evidence, (Second Ed.), section 262 and rule 801(d)(2), Proposed Rules of Evidence for United States Courts and Magistrates and the Advisory Committee's note to this section of the rule.

This presents the question whether North's statement to defendant that "his partner said he had been driving" involves the hearsay rule. See State v. Grady, 183

N.W.2d 707, 712–713 (Iowa 1971) where the court referred to a comment from Edmund M. Morgan, A Suggested Classification of Utterances Admissible As Res Gestae, 31 Yale L.J. 229 (1922). That an important distinction exists between hearsay and nonhearsay utterances of a declarant not offered as a witness for cross-examination when such assertions are offered by a testifying witness is well illustrated in the cited article.

In the case before us we gather the test to be whether North's testimony relative to Fallstone's statement was being offered at trial in this instance for the purpose of showing the truth of that statement or was it being offered merely as reporting a fact that an utterance had been made to North, a matter of which he had personal knowledge.

■ We conclude the State in this instance was offering North's testimony merely as a report of a fact that Fallstone had uttered the statement attributed to him and was not offered for the purpose of showing the truth of the utterance. Therefore, the hearsay rule is not involved as to that phase of the witness' testimony.

■ Assuming arguendo that defendant's response, "Yeah, what about it?" and his reply to the question, "Won't you ever learn not to drink and drive?" are admissions and hence admissible, the issue is whether these remarks are sufficient to generate a jury question as to defendant's operation of the motor vehicle at the time of the accident.

In view of our determination that the statements of Hart and North's answer to the question, "Did he know who was driving the car," were erroneously admitted, the State is left with only Miller's response, "Yeah, what about it?" and his answer to North's question to sustain its burden of establishing an essential element of the offense charged.

We conclude it was not enough. These statements do nothing more than generate mere suspicion or permit speculation or conjecture as to the identity of the driver.

We point out there was evidence in the record that when defendant and Fallstone were seen at 5:30 p. m. and again at 6:00 the day of the accident Fallstone was driving his automobile in which defendant was a passenger; that at 7:00 p. m. the two were seen again, this time Fallstone was driving defendant's car. This is not the factual situation presented in State v. Creighton, 201 N.W.2d 471, 472–473 (Iowa 1972). In the cited case, this court found "evidence—barely—to identify defendant as the driver of the vehicle involved" there. In the present case we do not find even barely enough for submission to the jury.

■ This determination brings us to those assignments of error in which defendant contends the trial court erred in failing to sustain his motion for directed verdict made at the close of the State's evidence and renewed at the close of all evidence. In this connection we call attention to the principle that no error can be predicated on the court's failure to grant a motion for directed verdict made at the close of the State's evidence. State v. Smith, 195 N.W.2d at 675. However, where such motion is renewed at the close of all evidence, as here, a proper issue is presented to this court for consideration. State v. Werner, 181 N.W.2d 221, 222 (Iowa 1970).

As indicated, defendant had urged in motion for directed verdict made at the close of the State's evidence and renewed at the close of all evidence that the State had failed to prove an essential element of the offense charged—identity of defendant as the driver of the vehicle involved.

■ Because of our conclusion that a jury question was not generated on this issue of identity, the trial court's failure to sustain defendant's motion for directed

verdict made at the close of all evidence requires reversal.

Therefore, the case is remanded to the district court for entry of an order dismissing the county attorney's information, discharging defendant and exonerating his bail or if money has been deposited instead, that it must be returned to him. Section 793.21, The Code.

It is not necessary that we reach other errors assigned by defendant, with one exception.

IV. We consider the exception now. The trial court ordered the total attorney fees on this appeal were not to exceed $250. Defense counsel argues the court's determination is arbitrary in light of the purpose and spirit of section 775.5, The Code, which provides in part: .

"An attorney appointed by the court to defend any person charged with a crime in this state shall be entitled to a reasonable compensation to be decided in each case by the court. * * * Such attorney need not follow the case * * * into the supreme court * * *, but if he does so his fee shall be determined accordingly."

■ Attorney fees authorized under this statute should be based to some extent at least on the extent of the work performed by counsel and expenses incurred on appeal. At the time the order was entered the trial court had not been furnished this information. The order was premature.

■ The trial court is therefore directed on remand to set aside its previous order and hold a hearing at which time defendant's counsel shall be permitted to show the extent of the work performed by him and any expenses incurred in connection with this appeal. He shall be entitled to reasonable compensation therefor.

The case is therefore—Reversed and remanded with directions.