391 F.2d 49
 Alvin A. JACOBSEN, Administrator of the Estate of Alan A. Jacobsen, Deceased, Appellant,
v.
INTERNATIONAL TRANSPORT, INC., E. E. Wolf, Allis-Chalmers Mfg. Co., and Jack M. Brown, a/k/a Jack M. Brown, Sr., Appellees.
 No. 18939.
 United States Court of Appeals Eighth Circuit.
 March 19, 1968.
 
 Walter A. Newport, Jr., of Newport, Wine & Schebler, Davenport, Iowa, for appellant.
 Theodore T. Duffield, of Patterson, Lorentzen, Duffield, Timmons, Wright & Irish, Des Moines, Iowa, for appellees; James A. Lorentzen, Des Moines, Iowa, on the brief.
 Before VAN OOSTERHOUT, Chief Judge, MATTHES, Circuit Judge, and HARRIS, Chief District Judge.
 VAN OOSTERHOUT, Chief Judge.
 
 
 1
 This is a timely appeal by Alvin A. Jacobsen, administrator of the estate of his deceased son Alan, from final judgment based upon a jury verdict for defendants dismissing his complaint against the defendants, the operator and owners of a tractor-trailer, for the wrongful death of Alan Jacobsen in a collision between the automobile Alan Jacobsen was driving and defendants' vehicle. The accident occurred on the early morning of April 22, 1966, near Walcott, Iowa. Hence the substantive law of Iowa controls. Jurisdiction, based upon diversity of citizenship and the requisite amount, is established.
 
 
 2
 Plaintiff bases this appeal solely upon his contention that testimony with respect to the alcoholic content of a blood sample withdrawn from the body of the decedent by the county medical examiner was improperly admitted into evidence over appropriate objection that the sample was obtained by means of an alleged illegal search and seizure and that the information contained in the medical examiner's report constituted an inadmissible privileged communication. The facts surrounding the fatal automobile accident are not relevant to the issue raised by this appeal and hence no purpose will be served by setting out such facts.
 
 
 3
 Plaintiff in support of his contention that the blood sample was illegally taken from the body of his decedent and that the result of the test was improperly received in evidence urges:
 
 
 4
 1. The result of the blood test is a privileged communication under § 321.271 I.C.A. and hence, inadmissible.
 
 
 5
 2. The result of the test is not admissible under the Iowa Implied Consent Law, ch. 321B, I.C.A., because (a) no written request for the sample was made by a peace officer as required by § 321B.3, and (b) the medical examiner failed to use a new factory wrapped needle in withdrawing the blood, as required by § 321B.4.
 
 
 6
 3. The taking of the blood sample constituted an unreasonable search and seizure in violation of the rights of the decedent under the state and federal constitutions.
 
 
 7
 We hold that plaintiff has failed to establish that the court committed error in receiving in evidence the results of the blood test, and we affirm the judgment of dismissal.
 
 
 8
 We shall summarize the pertinent facts bearing upon the issues before us. Dr. Perkins, a competent, qualified and licensed physician, is the duly appointed, qualified and acting medical examiner of Scott County, Iowa, the county in which the fatal accident here involved occurred. Dr. Perkins was promptly advised of the fatal accident and was told the body was being taken to the Mercy Hospital. He immediately went to the hospital and in his official capacity examined the decedent and found him to be dead. Dr. Perkins took charge of the dead body for the purpose of making the inquiry and report required by § 339.5, I.C.A.
 
 
 9
 He withdrew a blood sample from the body by means of a needle in accordance with the usual medical technique. He is not certain whether he used a needle from his own kit or one supplied by the hospital but he testified that in either event, the needle used was not a new one and that it was not taken out of an original factory package. Dr. Perkins testified that there was nothing in the procedure which he used to withdraw the blood which in any way would affect the validity of the blood test. The sample taken was properly preserved and traced into the hands of a qualified chemist who examined it and who appeared as a witness at the trial and described in detail the procedure used in making the test and vouched for its validity. The chemist testified that the test established that there were 344 milligrams of alcohol per one hundred c.c's of blood.
 
 
 10
 Dr. Perkins testified that he took the sample in his capacity as medical examiner at his own instance and that he had no written request for the taking of the sample from any peace officer. Dr. Perkins further stated in a supplemental affidavit that he took the sample for statistical purposes only, and "The taking of this blood sample was entirely extraneous insofar as involving any determination of the cause and manner of death of the decedent were concerned since my external examination and inquiries of other persons fully and completely disclosed the cause and manner of death of Mr. Jacobsen."
 
 
 11
 It is doubtless true that the injuries inflicted by the accident were the cause of the death and that the taking of the blood sample was not necessary to determine the cause of death. Upon the record before us, we cannot say that the taking of the blood sample did not fall within the scope of the rights and duties of the medical examiner to make the investigation required by statute.
 
 
 12
 Several officers testified that they detected a strong odor of alcohol about the body of the decedent immediately after the accident. The medical examiner was not asked whether he detected an alcoholic odor but it is reasonable to infer in event the officers' testimony is believed that the medical examiner had probable cause to believe from his examination of the body that the decedent had imbibed alcohol. We cannot say upon the record before us that the taking of the blood test had no reasonable relationship to the duties that the medical examiner was required to perform.
 
 
 13
 We find no merit to plaintiff's contention that § 321.271, I.C.A., makes the report of the medical examiner a privileged communication. Such statute deals with required reports to be filed with the Department of Public Safety. The powers and the duties of the medical examiner are set out in ch. 339, I.C.A.
 
 
 14
 In Lessenhop v. Norton, Iowa, 153 N. W.2d 107, 110-111, the court states:
 
 
 15
 "Section 339.5 makes it clear the examiner's duties are to inquire as to `the cause and manner of death' and file his findings with the county attorney and the criminal investigation division of the public safety department. It would seem his investigation is directed toward evidence of a crime and is not the same as an accident report filed by an investigation officer with the public safety department under section 321.266 of the Code. * *
 
 
 16
 * * * * * *
 
 
 17
 "Section 339.9 provides: `Reports of investigation made by the county medical examiner or his assistants, and records and reports of autopsies made under the authority of this chapter, shall be received as evidence in any court or other proceedings, except that statements by witnesses or other persons and conclusions upon extraneous matters are not hereby made admissible. * * *' (Emphasis added.) * * * It does not attempt to pass on the admissibility of reports containing extraneous matters or define extraneous matters. Obviously, then, that admissibility is to be governed by other well-established rules of evidence which the court must apply when timely and proper objections are made."
 
 
 18
 In Lessenhop, the court held a conclusory statement on the coroner's report stating the blood alcohol level was not admissible. The opinion stresses the lack of proper foundation for admission of the blood test result in that the manner of taking and preserving the sample was not shown nor was the identity of the person testing the sample disclosed, so as to afford opportunity for crossexamination as to procedures used in making the test. It would appear that the evidence was excluded on the basis of lack of foundation.
 
 
 19
 The court in its opinion, p. 111, observes, "appellant did not seriously contend that the medical examiner had no authority to take a blood sample from persons killed in accidents, * * *." The court did not expressly pass on the right of the medical examiner to extract a blood sample but the foregoing quoted statement and the opinion as a whole leave a strong impression that the Iowa court was of the view that power so to do exists in the medical examiner.
 
 
 20
 In Bill v. Farm Bureau Life Ins. Co., 254 Iowa 1215, 119 N.W.2d 768, 774, the court holds it was error to exclude the medical examiner's report, stating, "Section 339.9, supra, expressly provides that reports of investigations by the county medical examiner, and records and reports of autopsies made under his authority, shall be received in evidence."
 
 
 21
 We hold that the medical examiner's report is admissible under § 339.9 and that such report does not fall within the restrictions imposed by § 321.271.
 
 
 22
 The trial court based its holding that the result of the blood test was admissible principally upon the Iowa Implied Consent Law, ch. 321B, I.C.A. In so doing, we believe the trial court properly interpreted and applied the Iowa Implied Consent Law. Our holding hereinabove that § 339.9 controls would in itself justify an affirmance. However, since the trial court reached its decision largely on the Implied Consent Law and such holding has a bearing on the unlawful search and seizure issue hereinafter discussed, we deem it advisable to consider the admissibility of the blood test under the Implied Consent Law.
 
 
 23
 The standards for admissibility of a blood test are stated by the Iowa court in Lessenhop v. Norton, supra, and State v. Charlson, Iowa, 154 N.W.2d 829. Plaintiff's challenges to the admissibility of the blood test are confined to two grounds which are identical to the grounds of challenge made in Charlson, supra, such grounds being (1) the test is inadmissible because the needle used to extract the blood was not in a factory wrapped package as required by § 321B.4; (2) the sample was not taken at the written request of a peace officer.
 
 
 24
 Charlson squarely rejects the new needle requirement with respect to deceased persons. We need not and do not determine what the effect of a conscious person's refusal to permit the withdrawal of blood by a nonconforming needle might be.
 
 
 25
 The second point, relating to a written request for the sample by a peace officer, is determined on the basis of voluntary waiver in Charlson. That case and the authorities therein cited clearly hold that the Implied Consent Law is to be liberally construed in order to give the best effect to its purpose. In the light of the broad statutory powers given the medical examiner, it is not reasonable to believe that the legislature intended to require that the examiner obtain a request from a sheriff or a highway patrolman as a basis for his authority to extract a blood sample. Such an interpretation would fly in the face of the broad statutory powers given the medical examiner to conduct an inquiry and make an autopsy.
 
 
 26
 Moreover, as pointed out in Charlson, supra, at p. 833:
 
 
 27
 "`Section 321B.12. Other evidence. The provisions of this chapter shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether the person was in an intoxicated condition.' (emphasis added)"
 
 
 28
 "The evidence sought to be suppressed here fairly falls within the term `any other competent evidence', etc. to which 321B.12 refers. Further, this section expresses a legislative intent the chapter is not to be construed as limiting the introduction of competent evidence bearing on whether an accused was intoxicated."
 
 
 29
 The blood sample here in controversy has been properly taken, identified and preserved and proper evidence is in the record as to the reliability of the analysis vouched for by the chemist. Plaintiff urges, however, that the result of the test is inadmissible because the blood sample was obtained by means of an unreasonable and illegal search and seizure under the Fourth Amendment to the United States Constitution and Article I, § 8, of the Iowa Constitution. Such contention lacks merit. The blood was taken from a dead body by a licensed physician according to the usual medical techniques, acting under statutory authority given him as a medical examiner to take possession of the body and conduct an autopsy. The power to conduct an autopsy would clearly include the right to extract a blood sample. Under the circumstances of this case, we hold that the search and seizure was not unreasonable. See Schmerber v. State of California, 384 U.S. 757, 766, 86 S.Ct. 1826, 16 L.Ed.2d 908; Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L. Ed.2d 448; State v. Findlay, Iowa, 145 N.W.2d 650; Diener v. Mid-American Coaches, Inc., Mo., 378 S.W.2d 509; Davis v. Brooks Transp. Co., D.Del., 186 F.Supp. 366.
 
 
 30
 The testimony in the present case establishes that the quantity of alcohol in the blood of a deceased person is not diminished by elimination of alcohol through body functions as is the situation with a living person. Upon this basis, plaintiff asserts that emergency steps relied upon in cases such as Schmerber and Findlay are not here present as there is no danger that a reasonable delay to obtain a search warrant would affect the evidentiary value of the sample. The appropriate test is not whether it was reasonable to procure a search warrant but whether the search was reasonable under the existing circumstances. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Wright v. United States, 8 Cir., 389 F.2d 996 (Feb. 19, 1968).
 
 
 31
 From what has heretofore been said, it is apparent that the broad power given the medical examiner makes the taking of the blood sample under the circumstances and conditions reflected by this record reasonable. We have heretofore held that there has been substantial compliance with the Iowa Implied Consent Law and such determination supports the conclusion that the search was reasonable. Section 321B.5 provides that in the case of a dead or unconscious person, the implied consent to the taking of a blood sample shall not be deemed to have been withdrawn and that the certification that the person from whom the blood was extracted is dead shall obviate requirements of arrest and advice as to legal rights.
 
 
 32
 The trial court committed no error in receiving in evidence the testimony with respect to the result of the blood test.
 
 
 33
 The judgment of dismissal is affirmed.