**Myrna R. LOGSDON, Mother and Administratrix of the Estate of her son, Mark F. Logsdon, Deceased, Individually and as Wife of Hugh D. Logsdon, Plaintiff,**

v.

**Joel P. BAKER et al., Defendants.**

**Civ. A. No. 1694-72.**

United States District Court,
District of Columbia.

Nov. 16, 1973.

Leonard C. Collins, and Thomas B. Lawrence of Collins, Lawrence & Larsen, Washington, D. C., for plaintiff.

Anthony E. Grimaldi of Doherty, Sheridan & Grimaldi, Fairfax, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

YOUNGDAHL, Senior District Judge.

This is a wrongful death and survival action by the mother of the decedent to recover damages for the death of her son due to the alleged negligence of the Colonial Fuel Company. Plaintiff is the mother of Mark F. Logsdon and the administratrix of his estate. Defendants are a partnership trading as the Colonial Fuel Company, and the owners of the fuel truck involved in this accident. There is no issue of agency.

Said action came before this Court for trial before a jury on the 4th day of September, 1973. When it appeared, on the issue of liability, that there were no eyewitnesses to the accident and that plaintiff's endeavor to establish a *prima facie* case rested solely on the testimony of an expert witness, the Court excused the jury in order to conduct a *voir dire* of the expert. This was done so that the Court, in its discretion, could determine as a matter of law whether there was sufficient factual basis to receive into evidence the expert's opinion on the issue of liability.

After the Court heard the testimony of the expert witness and the arguments of counsel on the admissibility of such testimony, it ruled such expert opinion testimony totally inadmissible. When plaintiff advised the Court that she had no other evidence of liability other than that of the expert's testimony, the Court directed a verdict in favor of defendants. The Court did not consider, as an issue, the affirmative defense of contributory negligence.

It is undisputed that on February 4, 1972, at about 11:45 a. m., plaintiff's decedent, Mark F. Logsdon, was operating a motorcycle in a northerly direction on 33rd Street, N.W., in the District of Columbia. At about the same time a fuel truck owned by the Colonial Fuel Company and being operated by Paul Wolworth within the scope of his employment was proceeding in an easterly direction on Tennyson Street, approaching the intersection with 33rd Street. 33rd Street has two lanes running north and south. Tennyson Street has two lanes running east and west. The two streets intersect each other at approximately right angles. The intersection is controlled by stop signs on the northeast and southwest corners of Tennyson. A collision occurred within the intersection between decedent's motorcycle and de-

fendant's truck. It was daylight, the weather clear and the roads dry.

There were no eyewitnesses to the accident. Both drivers were alone, and the truck driver was neither deposed nor called to testify at trial. One of plaintiff's witnesses, a postman, testified that although he was between 200 and 300 feet from the intersection when he heard the collision, he did not see it happen.

There were no skid marks by either vehicle at the scene of the accident. Photographs taken at the accident site by the police do not reveal the presence of skid marks and none were observed by witnesses.

It is undisputed that the motorcycle struck the truck's right rear wheel in the southeast corner of the intersection. Photographs of the debris at the scene and the testimony of the postman establish this as the general area of the collision. A more precise location cannot be established in view of the fact that the motorcyclist did not survive the accident, the truck driver was neither deposed nor called to testify, and the deposition of the investigating officer was not offered into evidence. The postman testified that after hearing the crash he proceeded towards the intersection to investigate. He observed that part of the truck had already cleared the intersection and was at rest in the eastern portion of Tennyson Street. He saw the motorcycle lying against the south curb, five feet east of the eastern curb line of Tennyson, the body of the decedent positioned near it, and his helmet 90 to 100 feet into the eastern portion of Tennyson Street. The postman also testified that he watched the truck driver stand the motorcycle up and turn it around and then saw him drive his truck out of the intersection and park it 150 feet further east on Tennyson. The driver then returned to the accident site and began mopping up the oil spill from the motorcycle.

Since both vehicles were moved before the police arrived, the photographs taken at the scene of the accident do not indicate the position of the vehicles immediately after impact. Although the photographs were received into evidence, they merely depict various views of the intersection and show the damage to the two vehicles. There are no photographs of the position of the decedent's body since he too had been removed from the scene when the police arrived.

The measurements taken at the scene of the accident by the investigating officer were not offered into evidence. However, it should be noted that the only measurements which he took were the width of the two streets and the estimated point of collision. As indicated above, there were no skid marks to measure and the two vehicles had already been moved from the point of impact before the police arrived.

Plaintiff presented no evidence of the condition of the brakes of either the truck or the motorcycle. Nor was any evidence introduced concerning the kind, condition or inflation of the tires of either vehicle. There was no testimony as to the type of street surface at the accident scene.

Aside from the testimony of the postman, who did not witness the accident, and a neighbor, who also testified as to the position of the decedent's body after the accident, plaintiff's entire case as to defendant's liability rests exclusively upon the testimony of the expert witness.

Plaintiff called as an expert witness on accident reconstruction a scientist and engineer specializing in mechanical engineering and related physical sciences dealing with automotive work. He testified that 17 months after the accident he visited the intersection of Tennyson and 33rd Streets where the accident occurred. There he took various sight-distance measurements. He then visited the Colonial Fuel Company where he inspected the truck which had been involved in the accident. No evidence was received concerning the use of the truck over the 17-month period. From these

visits and inspections almost a year and a half after the accident, and primarily from a detailed examination of the photographs received into evidence, the expert attempted to reconstruct the speed of both vehicles and to explain how the collision occurred.

Although acknowledging the absence of skid marks in any of the photographs, he claimed he was able to discern "brake marks" in one of the photographs which he "assumed" came from the truck involved in this accident. He testified that his measurments of these brake marks in this one photograph enabled him to deduce the speed of both vehicles and conclude that the truck had failed to stop for the stop sign before proceeding into the intersection. He testified that the brake marks, when read in conjunction with such factors as the damage to the two vehicles and the location of the body, helmet, cycle and oil stains, enabled him to employ the laws of dynamics and physics to reconstruct the accident. It was his expert opinion that the truck proceeded through the stop sign at 23 miles per hour and braked to 13 miles per hour when the motorcycle travelling 25 miles per hour collided with it.

Therefore, the issue before this Court was to determine whether the factual foundation for the expert's opinion testimony was so conjectural and speculative as to constitute error to permit the jury to consider the credibility of such opinion on the issue of liability.[1]

Since expert opinion testimony constitutes an exception to the general rule that opinion testimony is inadmissible, its admission should be limited within the bounds of necessity. It is for this reason that the qualification of an expert witness and the limitations imposed on his testimony are left to the sound discretion of the trial judge. Salem v. United States Lines, 370 U.S. 31,

---

1. In her motion for a new trial plaintiff requested leave to submit additional memoranda on the issue of the admissibility of the testimony of the expert witness pending receipt of his transcribed testimony. However, in the memorandum subsequently filed with this Court, it appears that plaintiff has abandoned this argument since she neither argued the admissibility of such testimony nor cited authorities in support thereof. Instead, plaintiff has introduced a new and most novel and unusual theory in support of her new trial motion. Plaintiff now argues that even though there were no eyewitnesses to the accident, the mere happening of a collision in an intersection controlled by a stop sign establishes a *prima facie* case of negligence on the part of the driver on the left confronted by the stop sign.

Section 48 of the Traffic and Motor Vehicle Regulations for the District of Columbia is the appropriate regulation governing vehicle procedure at a stop sign. Although this regulation was mentioned in the pretrial statement, it was not offered and received into evidence. However, assuming *arguendo* that it was in evidence, the mere existence of the stop sign does not establish a *prima facie* case of negligence on the part of defendant absent evidence that he in fact failed to stop at the sign before proceeding into the intersection. Plaintiff cites no cases which establish her proposition and the Court has found none. The traffic regulation requiring a motorist to stop at a stop sign and yield the right of way to a vehicle which is either within the intersection or approaching so closely as to constitute an immediate hazard does not confer an *absolute* right of way on the vehicle having the right of way. The law does not confer the right of way without reference to such factors as the distance of the vehicles from the intersection, their respective speeds, and other prevailing traffic conditions. Precedence is not given under all circumstances to a vehicle approaching the intersection on the favored street. Although such traffic is entitled to priority, no driver of an automobile has the right to approach an intersection without using reasonable watchfulness and caution. It is in this respect that the rule regarding the right of way is often referred to as relative rather than absolute. Raaen v. Southern Hotel Supply Co., 31 A.2d 659 (D.C.Mun.App.1942) ; Towles v. Arcade-Sunshine Co., 32 A.2d 870 (D.C.Mun.App. 1943) ; D. C. Transit System, Inc. v. Harris, 284 A.2d 277 (D.C.App.1971). Accordingly, once a motorist at a stop sign has stopped and yielded the right of way to vehicles which constitute an immediate hazard on the favored street and has determined that there is no reasonable danger of collision from other vehicles if he proceeds into the intersection, then he has the right to so proceed and cross the intersection.

35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Reagan v. Sinclair Refining Co., 319 F. 2d 363 (5th Cir. 1963), cert. denied, 376 U.S. 956, 84 S.Ct. 975, 11 L.Ed.2d 974 (1964); Harvey's Inc., v. A. C. Electric Co., 207 A.2d 660 (D.C.App.1965). As the Supreme Court said in *Salem*, "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." 370 U.S. at 35, 82 S.Ct. at 1122, 8 L.Ed. 2d at 317.

■ Four conditions must be satisfied before the trial judge, in the exercise of his discretion, may decide as a matter of law that expert opinion testimony may be received at trial. First, the trial judge must be satisfied that the expert has the necessary expertise in the specific area about which he expresses an opinion. This may result from his education, training or experience in his field. Second, the area of inquiry should require an employment of the principles of science, engineering, business or other occupation beyond the ken of the average juror. Third, and crucial to this case, the expert's opinion cannot be based on speculation or conjecture, but must be grounded on evidentiary facts in the record or reasonable inferences arising therefrom. And finally, there must be an apparent need for such expert testimony in order to aid the jury in their resolution of the issue.

■ The *sine qua non* of expert opinion testimony is that its basis be grounded in fact—not conjecture. As such, the opinion testimony of an expert witness may either be based upon facts within his own knowledge or upon hypothetical questions which assume a state of facts supported by the evidence. In either case, however, the opinion of the expert witness must be based upon proved or assumed facts which are sufficient to form a basis for his opinion. In

Atlantic Life Insurance Co. v. Vaughan, 71 F.2d 394 (6th Cir. 1934), cert. denied, 293 U.S. 589, 55 S.Ct. 104, 79 L. Ed. 684 (1934) the court expressed the familiar rule thus:

"While the courts will give wide latitude to the reception of expert opinion evidence, we think it is axiomatic that it must be based upon conceded or proved facts, and that a naked opinion, based obviously on mere speculation and conjecture, does not rise to the dignity of evidence, . . ." 71 F.2d at 395.

Consequently, should the factual foundation of the expert's opinion prove nebulous, such testimony will not be admissible into evidence.

Accident reconstruction hinges primarily on the determination of speed at time of impact. Absent eyewitnesses to the speed of the vehicles prior to collision, other factors must be considered. In general, the factors which play a major role in speed reconstruction and which are most often relied upon by experts are skid marks, vehicle damage, vehicle characteristics, highway conditions, and vehicle position after impact. Consequently, in order to evaluate this expert's opinion testimony regarding the speed of the two vehicles at impact, it is important to focus our attention on two aspects: first, to determine which of these factors comprise the factual foundation of his opinion testimony, and second, to examine the nature of these factors in the context of this accident.

■ A factor of considerable importance to the present case is the striking absence of skid marks by either vehicle. It is generally recognized that where skid marks and other physical facts are present, a law enforcement officer, accident investigator or safety engineer who qualifies as an expert in accident reconstruction may give opinion testimony as to the speed of the vehicle which made them.[2] The absence of skid marks, how-

2. *See* Bonner v. Polacari, 350 F.2d 493 (10th Cir. 1965); White v. Zutell, 263 F.2d 613 (2nd Cir. 1959); Snyder v. New York Cent. Transp. Co., 4 Mich.App. 38, 143 N.W.2d 791 (1966); Anglin v. Nichols, 80 Ariz. 346, 297 P.2d 932 (1956); Annot., 29 A.L.R.3d 248 (1970).

ever, seriously discredits the opinion testimony of such an expert. Moreover, if, in addition to the absence of skid marks, the other physical facts surrounding the accident are either unknown or of a highly speculative nature, such expert opinion testimony as to speed must be rejected.

A case which exemplifies this proposition and bears a striking similarity to the situation which confronts this Court is Campbell v. Barlow, 274 Ala. 627, 150 So.2d 359 (1962). Like the present case, the trial judge in *Campbell* was confronted with an expert witness who sought to give opinion testimony as to the speed of two vehicles where no skid marks were in existence. The court examined the other physical facts surrounding the accident upon which the expert based his estimation of speed. These were the distance the vehicles traveled from the point of impact, damage to the vehicles, the manner in which the debris was scattered, and the markings on the road after impact. The court concluded, in light of the absence of skid marks, that these other factors were not sufficiently probative to permit the expert to give opinion testimony as to the speed of the vehicles. In ruling his testimony inadmissible the court said:

"We are led irresistably to the conclusion, from the absence of any skid marks or other evidence from which a reasonable opinion as to speed could be predicated, that the trial court committed prejudicial error in overruling appellant's well-grounded objection to the testimony." 150 So.2d at 360.

Like *Campbell*, this Court is confronted with an accident which produced no skid marks and few physical facts of a certain nature. Therefore, in view of the marked absence of skid marks, it is important to focus our attention on the nature of the other physical facts surrounding this accident. However, before doing so, one aspect of plaintiff's evidence on the subject of tire marks merits closer examination.

The expert witness testified that he inspected the photographs taken at the scene of the accident. He acknowledged the absence of skid marks in them. However, in one of the twelve photographs received into evidence, plaintiff's exhibit 2A, he testified that he detected "brake marks." He explained that these were caused by rubber from the tire being implanted on the road surface, but in a manner not as pronounced as skid marks. He testified that from a measurement of these marks in the photograph and a consideration of the other facts of the accident, he was able to calculate the point of impact in order to arrive at the speed of the truck at collision and conclude that it had not stopped for the stop sign.

Although photographic evidence of tire marks may be admitted into evidence, this is always subject to the rule that there must be evidence to connect such marks with the vehicle which allegedly caused them. This rarely presents a problem since the tire marks at the scene of an accident have usually been examined, measured and compared with the vehicle which made them in order to verify their identity. Here, however, the existence of the brake marks seems to have first become evident when the expert examined the photographs 17 months after the accident. The most serious dilemma which this poses is that, although the photographs were received into evidence, no evidence was introduced to link these marks with defendant's truck. It is hard to see at this stage how any such evidence could be introduced. In fact, the most obvious difficulty with the expert's testimony on this point is that he matter of factly *assumed* that the brake marks which were in the photograph were made by the truck. There was no testimony by any other witness that the brake marks in question were indeed made by the truck which was involved in *this* accident.

The Court examined the expert closely on this matter:

"Q. How can you say that [the brake marks] were from the truck?

A. They are dual tire marks, your Honor. And . . . .

Q. Might not there be some other dual tire that might have gone over that intersection and left those marks there?

A. Those are . . . .

Q. Might not there be some other vehicle with dual marks that had gone over that same place?

A. There could be another vehicle. But these are braking marks.

Q. Might not another vehicle produce those braking marks?

A. It is possible. Yes, sir.

Q. That is all I am asking. You are assuming that these came from the truck."

And later, under cross-examination by defense counsel, plaintiff's expert witness again admitted the assumption upon which his testimony was based:

"Q. But you have to concede that they could have been done sometime prior to this accident by some other vehicle?

A. It is possible."

■ What the expert has done, and what this Court finds impermissible, is to base his opinion on facts not in evidence in order to arrive at a conclusion of liability. Since no evidence was introduced to link the brake marks which he detected in the photograph to the truck involved in this accident, the Court cannot allow the expert to base his opinion of vehicular speed on such an admitted assumption. If the facts are doubtful or in controversy, the opinion testimony of experts must be excluded. In the words of one court:

"The opinion, [of an accident reconstruction expert] if needed, must be based on facts existing at the time of the accident and absent such facts, the opinion is worthless and it's reversible error to admit it. To be admissible, the opinion must be grounded in something more than mere conjecture, speculation or personal surmise." Abramson v. Levinson, 112 Ill.App.2d 42, 250 N.E.2d 796, cert. denied, 398 U.S. 950, 90 S.Ct. 1868, 26 L.Ed.2d 290 (1970). (Citations omitted)

As a final comment, it should be noted that even the *presence* of skid marks at an accident scene has often resulted in the exclusion of expert opinion testimony regarding speed where other substantial facts surrounding the collision are conjectural or missing.[3] A case in point within our own jurisdiction is Bell v. Myrtle, 153 A.2d 313 (D.C.Mun.App. 1959) wherein the court stated that expert testimony by a police officer as to speed would be too speculative where the only evidence of speed at impact was a photograph of the damaged vehicle, testimony of a witness who observed the accident, and 20 feet of skid marks formed after impact. It is interesting to note that the evidence which the court in *Bell* considered insubstantial to support expert testimony was not even present in the instant case. That is, there were no skid marks by either vehicle before or after impact, no eyewitnesses to the collision, and no evidence of the exact point of impact within the intersection.

Another factor which is often considered in the reconstruction of vehicle speed prior to impact is the damaged condition of the vehicles after impact. It is quite evident to this Court that, in addition to the photographic evidence of brake marks, the expert witness has relied heavily on the photographs of vehicle damage to the motorcycle and his examination of the truck 17 months after

3. *See* Solomon Dehydrating Co. v. Guyton, 294 F.2d 439 (8th Cir. 1961), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961); Haug v. Grimm, 251 F.2d 523 (8th Cir. 1958); People v. Zimmerman, 385 Mich. 417, 189 N.W.2d 259 (1971); Brugh v. Peterson, 183 Neb. 190, 159 N.W.2d 321 (1968).

the accident in estimating the speed of each vehicle prior to impact. Additional factors were considered by him, such as the location of the decedent's body and helmet, the debris at the scene, and the vehicles after impact, but these were factors which paled in comparison to the reliance which he placed on the brake marks and the vehicle damage.

Although case law seems to divide evenly on the admissibility of opinion testimony based on vehicle damage, as a general rule it is inadmissible when it is the principal basis of the expert's opinion.[4] In a situation which is again remarkably similar to the case at bar, the court in Stephanofsky v. Hill, 136 Conn. 379, 71 A.2d 560 (1950), held it reversible error to permit an expert witness to give opinion testimony as to the speed of a vehicle involved in a collision where no skid marks were present and where the expert based his opinion primarily on photographs of the damaged vehicle, personal observation of the car, and knowledge of the position of the body of decedent at the scene.

Since this Court has rejected the photographic evidence of brake marks as a factor in the determination of speed, the expert's heavy reliance on the damage to the vehicles emerges by default as the principal basis of his opinion as to speed before impact. As such, it would be clearly erroneous for this Court to permit this expert witness to render such opinion testimony. This becomes especially true in view of the overwhelming paucity of factual information surrounding this unfortunate accident, the scanty evidence adduced at trial, and the speculative nature of the other factors relied upon by the expert. Accordingly, it would also be clearly erroneous to permit him to venture his opinion that the truck did not stop for the stop sign.

The expert here is in the realm of pure speculation. His testimony is plainly dependent upon too many variables and assumptions. There were no eyewitnesses, no skid marks, no certainty regarding the point of collision within the intersection, no knowledge of the distance traveled after impact, no photographs of the collision, no measurements regarding the position of the vehicles or decedent's body, and no evidence of the condition of either vehicle prior to impact. Inferences based on mere assumptions must never be confused with inferences drawn from facts in evidence. There is a vast difference between permitting an expert to give an opinion as to speed when all the pertinent factors are present and permitting such a conclusion when only the barest of details are known. In this instance, the expert has assumed the very facts which are not in evidence and which must first be established, in order to arrive at his ultimate conclusion regarding speed and fault. It appears to this Court that to permit expert opinion testimony in the present case would result in the classic situation of permitting the expert witness to base one calculated guess upon another. And in this, the age of experts, the impressive credentials and apparent competency of such a witness would merely aggravate the error immeasurably.

Upon consideration of the Motion for New Trial filed by plaintiff Myrna R. Logsdon, the memoranda of points and authorities in support thereof and in opposition thereto, oral arguments of counsel having been heard, and for the reasons set forth in the Memorandum Opinion, it is by the Court this 16th day of November, 1973,

Ordered that the plaintiff's motion to set aside the directed verdict and judgment entered thereon in favor of defendants and to grant a new trial and set a date for argument be, and the same is hereby, in all things denied.

---

4. *See* Flores v. Barlow, 354 S.W.2d 173 (Tex.Civ.App.1962) ; Choat v. McDorman, 86 Nev. 332, 468 P.2d 354 (1970) ; Grasty v. Tanner, 206 Va. 723, 146 S.E.2d 252 (1966) ; Annot., 93 A.L.R.2d 287 (1964).