Elizabeth L. HENKEL, Appellant,

v.

Clara HERI, as Executor of the Estate of Clarence Heri, Deceased, Appellee.

No. 60682.

Supreme Court of Iowa.

Jan. 24, 1979.

Rehearing Denied Feb. 15, 1979.

Russel A. Neuwoehner and Donald R. Breitbach, Dubuque, for appellant.

William C. Fuerste and Robert L. Sudmeier, Dubuque, for appellee.

Considered by REES, P. J., and HARRIS, McCORMICK, McGIVERIN and LARSON, JJ.

REES, Justice.

This appeal is from judgment entered on a jury verdict for defendant in an action for damages alleged to have resulted from a motor vehicle accident. The Court of Appeals affirmed, and we granted further review. We now vacate the judgment of the Court of Appeals, reverse the trial court, and remand for a new trial.

The automobile, in which the plaintiff was riding at the time she allegedly sustained injury, was driven by one Daniel DeMaio and collided with one driven by the defendant's decedent. The jury returned a verdict for the defendant and plaintiff appealed, culminating in affirmance of the judgment by the Court of Appeals. We granted plaintiff's petition for further review to clarify apparent ambiguities in existing case law concerning (1) foundation requirements for the admission into evi-

dence of the results of blood tests in civil and criminal proceedings, and (2) foundation requirements for expert testimony regarding vehicle speed.

Over plaintiff's objections, the trial court admitted evidence of a blood test of DeMaio shortly after the accident. Although De-Maio was not a party to the action, the defendant was attempting to establish the manner of DeMaio's operation of his car as the proximate cause of plaintiff's damages.

The Court of Appeals held that the evidence of the blood test was properly admitted, concluding that when evidence of a driver's blood test is introduced in a civil action, a showing of the nine foundational requirements set out in *Lessenhop v. Norton*, 261 Iowa 44, 52–53, 153 N.W.2d 107, is not required when the rights of the driver are not at issue. The defendant had failed to show that blood was withdrawn from DeMaio by "a licensed physician, or a medical technologist or registered nurse designated by a licensed physician as his representative". Such a showing is required by both the *Lessenhop* criteria and by § 321B.4, The Code. The defendant also failed to establish that DeMaio consented to the test or was incapable of giving consent under § 321B.5, The Code, before the test was administered. This latter requirement is not a part of the *Lessenhop* criteria, but is mandated by chapter 321B, Iowa's implied consent statute.

Further, at trial an accident reconstruction expert testified that he had made a determination of the speed of the vehicles based on a "conservation of momentum-vector" analysis. The trial court admitted the testimony of the expert over plaintiff's foundational objections that the expert was disregarding many factors allegedly relevant to a determination of speed.

In affirming, the Court of Appeals held that plaintiff's objection did not involve a genuine foundational issue, but only a disagreement respecting the facts necessary to compute speed under a "conservation of momentum-vector" analysis.

The following issues are presented for review:

(1) Must the foundational requirements of chapter 321B be met before evidence of the results of a blood test for alcohol content can be admitted into evidence in a civil action in which the examinee is not a party?

(2) Did the Court of Appeals err in concluding that plaintiff's objection to the expert testimony related to the factual components of the "conservation of momentum-vector analysis" method of determining speed rather than the foundational basis for such evidence?

■ I. The first issue for review involves a determination of the scope of the applicability of the foundational requirements of chapter 321B, The Code, for the admission into evidence of blood test results. The plaintiff would have us reverse the trial court and the Court of Appeals and hold that the foundation required by chapter 321B must be complied with before evidence of the results of a blood test may be admitted in a civil action where the inebriation of a driver of a motor vehicle is at issue. The defendant contends that the foundational requirements of chapter 321B should not be applied beyond the prosecution of individuals for operating a motor vehicle in an intoxicated state, and that when a foundation can be established to show the test and its result to be reliable, evidence of the test should be admitted. For the reasons set out below, we agree with the defendant's contentions. The Court of Appeals reached the proper conclusion in affirming the trial court in this regard.

An examination of the language of chapter 321B leads us to the conclusion that the foundational facts therein established were not intended by the Legislature to be applied in all instances where the results of blood tests were sought to be admitted into evidence. Section 321B.10, The Code, provides:

"Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while operating a motor vehicle upon a public highway of this state while

under the influence of an alcoholic beverage, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, saliva or urine is admissible."

Section 321B.12 provides:

"The provisions of this chapter shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether the person was under the influence of an alcoholic beverage."

Thus, if evidence of the results of the blood test can be shown to be "competent", the statute apparently mandates its admission, regardless of whether it would be admissible in a prosecution for operating a motor vehicle under the influence under chapter 321B. This was our conclusion in *Brooks v. Engel*, 207 N.W.2d 110 (Iowa); as well as of the Eighth Circuit Court of Appeals in *Jacobsen v. International Transport, Inc.*, 391 F.2d 52, in construing chapter 321B and § 321B.12 in particular.

An examination of the case law relating to chapter 321B results in our conclusion that there are ambiguities as to the applicability of chapter 321B foundational requirements in civil actions.

*Lessenhop v. Norton*, supra, was a wrongful death action in which the defendants introduced evidence of the results of the decedent's blood test. At issue was the applicability of chapter 321B. There, the court stated, at 261 Iowa 52–53, 153 N.W.2d 112:

"Chapter 321B clearly relates to the authority to take blood tests when a person is suspected of driving while intoxicated, and provides no rules for admission of these tests into evidence in cases such as we have here. In any event, upon challenge the results of such tests must be shown competent, relevant and material by the party making the offer.

"Before the blood test analysis may be introduced into evidence, it would appear that the party seeking introduction must show (1) that the blood was timely taken (2) from a particular identified body (3)

by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons whose supervision the tests were conducted be established."

Earlier, in the *Lessenhop* opinion, at page 111 of 153 N.W.2d, we set forth another statement of the foundational criteria to be applied in the context of civil litigation where the intoxication of the driver of the motor vehicle is at issue:

"Before any result of a blood test analysis can be admitted in any civil or criminal case, the party seeking to introduce such evidence must first lay a proper foundation for its admission. Unless waived, this foundation must show that the specimen was taken by a duly-authorized person using proper sterile equipment, that it was properly labeled and preserved, that its care and transportation were proper, and also the identity of persons processing it so as to give the opposing party the opportunity to cross-examine as to the care and procedure used in the test."

We have, in the past, found the foundational criteria of chapter 321B to be inapplicable in the context of wrongful death actions where the issue involves an allegedly intoxicated motorist. In *Lessenhop*, we said that "Chapter 321B . . . provides no rules for admission of these tests into evidence in cases such as we have here." A similar conclusion was reached in *Brooks v. Engels*, 207 N.W.2d 110, where the blood test was of a person who had fallen out of a boat and drowned. Other states, when faced with the issue of applying implied consent statute foundational standards to civil litigation, have declined to do so. *Quesnel v. Raleigh*, 128 Vt. 95, 258 A.2d 840, 844 (Vermont); *Branch v. Wilkinson*, 198 Neb. 649, 256 N.W.2d 307, 313 (Nebraska). In *Branch*, the Nebraska Court said:

"This case is a civil action, wrongful death, not a criminal prosecution. The defendant was never under arrest or in custody. The implied consent statute has no application here."

The inappropriateness of the 321B foundation in the wrongful death action in *Lessenhop* indicates an equal degree of inappropriateness in the civil damage case before us here.

Despite the disclaimer preceding the nine-part foundation in *Lessenhop*, stating chapter 321B requirements to apply to prosecutions of intoxicated motorists and not the *Lessenhop* factual situation, the nine-factor test has been treated as synonymous with · the foundational requirements of chapter 321B, both in *Brooks v. Engel*, 207 N.W.2d at 114, and by the Court of Appeals in this case. Yet, if it were to comprise a full listing of the foundational requirements of chapter 321B, there is no mention of the actual or implied consent of the driver, an unusual omission relating to an implied consent statute. The conclusion that the nine-factor standard was meant to be applied in non-chapter 321B instances is re-enforced by its similarity to the standard enunciated at page 111 of 153 N.W.2d in *Lessenhop*, as well as the apparent focus on the reliability of the test procedure rather than the personal rights of a suspect being tested for intoxication.

Some of this confusion may result from the similarity between parts of the nine-point *Lessenhop* test and the language of chapter 321B. This is especially true regarding the third *Lessenhop* criterion, which basically mirrors the language of § 321B.4: "by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician". This language differs from that used in the initial *Lessenhop* statement of the foundation showing necessarily preceding the admission of a blood test analysis which requires the specimen to have been taken by "a duly-authorized person", *Lessenhop* at 111.

■ The difference in the language employed in the *Lessenhop* version of the showings required in non-chapter 321B foundations highlights one of the appellant's contentions on appeal. Admittedly, the medical technologist who took the blood sample from DeMaio had not been designated to do so by a licensed physician and such a procedure did not conform to the mandate of either § 321B.4, The Code, or the nine-part *Lessenhop* foundation requirements. Still, a medical technologist is a "duly-authorized person" within the meaning of the initial foundational requirements set out in *Lessenhop* when we realize that the focus is on the reliability of the procedure followed in considering the foundational criteria outside the 321B setting. Here, the medical technologist had three years of college and subsequent in-service training. *Brooks v. Engel*, supra, at 114. The competence of a medical technician to administer a blood test has been judicially established in *State v. Deming*, 66 N.M. 175, 344 P.2d 481 (New Mexico). Whether the medical technologist was designated by a licensed physician relates not so much to the reliability of the testing, but to procedural compliance with § 321B.4. The reliability of the test is not challenged by the plaintiff, only non-compliance with § 321B.4, The Code. Any tension between the standards set out in ·*Lessenhop* for the admissibility of blood tests in civil or criminal litigation must be resolved in favor of the standard which best preserves the reliability requirement while allowing the admission of relevant evidence. We therefore conclude the proper standard to be applied in this case is whether the sample was taken by a "duly-authorized person", and that a properly trained medical technologist is such a duly-authorized person. Had the plaintiff wished to challenge the reliability of the administration of the test, the medical technologist who took the sample did testify at trial and was available for cross-examination. Absent attack on the reliability of the testing, we find the trial court did not abuse its discretion in admitting the evidence in question.

The other alleged omission from the necessary foundational showings concerns the failure to show that DeMaio consented or

was incapable of consenting to the testing under § 321B.5, The Code. We have concluded that a civil action for wrongful death does not constitute "321B circumstances" and that the foundational requirements of chapter 321B are inapplicable in such situations. See *Lessenhop,* supra. A like conclusion follows in a suit for damages. With chapter 321B thus inapplicable, we must consider plaintiff's contention in light of the civil standards set forth in *Lessenhop.* Nowhere is mention made of the consent requirement of § 321B.5. Nor can we reasonably expect any if the purpose of foundational requirements is to insure reliability. The consent portions of § 321B.5 have no applicability outside 321B circumstances. *Brooks v. Engels,* supra; *Lessenhop,* supra. Therefore, the trial court did not abuse its discretion in admitting evidence of the blood test over plaintiff's objection on these grounds.

Any lack of congruity between the foundational standards of chapter 321B and those otherwise applicable is justified by § 321B.12 which provides that the provisions of the chapter shall not be construed to limit the admissibility of any competent evidence on a question of intoxication. By establishing extra-321B foundational criteria we are merely following the intent of the Legislature and establishing foundational requirements for certain types of "other competent evidence", as noted in *State v. Charlson,* 261 Iowa 497, 505, 154 N.W.2d 829, 832.

■ II. In *Lessenhop* we set forth two separate statements of the foundational showings required for the admission of the results of blood tests in non-321B cases, at pages 111 and 112 of 153 N.W.2d, respectively. In the interest of clarity and convenience, we now hold that the standard established on page 111 should be applied in the future. As indicated above, the standard set out at page 111 is more exclusively related to the reliability of the testing and not so readily confused with the requirements of chapter 321B. Also, the shorter statement on page 111, rather than the nine-point test on page 112, has been con-

strued by us to apply to civil and criminal actions outside the scope of chapter 321B. *State v. Davis,* 269 N.W.2d 434, 441 (Iowa 1978); *Brooks v. Engel,* supra; *State v. Charlson,* supra, at page 835 of 154 N.W.2d; *Jacobsen v. International Transport, Inc.,* 391 F.2d 52.

The adoption of one standard also serves to avoid confusion and ambiguity which may result from the construction of alternative standards.

■ III. In the second issue stated for review, plaintiff challenges the ruling of the trial court and the affirmance by the Court of Appeals regarding the admissibility of the expert testimony of Dr. George Brown, regarding the speed of the cars involved in the collision. Plaintiff's challenge to the expert testimony of Dr. Brown is on several grounds, all foundational, relating to various physical factors which were, or were not, given weight by Dr. Brown in reaching his conclusions. Dr. Brown formulated his opinion from an examination of photographs and diagrams of the accident site. Plaintiff argues Dr. Brown's lack of firsthand familiarity with the circumstances of the accident are a proper ground for exclusion, but we conclude this ground alone is not meritorious.

The plaintiff further contends the trial court abused its discretion in permitting Dr. Brown to testify even though the following facts had not been established foundationally: (1) the incline of the roadway, (2) specific condition of the surface of the roadway at the time of the collision, and (3) the type and condition of the tires on the vehicles. Objection was also made to the fact that Dr. Brown did not consider whether the brakes had been applied on either vehicle and gave no consideration to the presence or lack of tire marks on the pavement. Dr. Brown stated that he assumed the cars had slid to their position of rest due to their damaged condition as evidenced by the photographs. The Court of Appeals characterized plaintiff's objections as "a disagreement as to what facts are important to a determination of speed based upon a conservation of momentum-vector analysis

rather than a lack of proper foundation", and found Dr. Brown to be a qualified expert. For the reasons we set forth below, the rulings of the trial court and the conclusions of the Court of Appeals must be set aside and the case remanded for a new trial.

We have on several occasions addressed the factors which must be considered in formulating an opinion as to the speed of the motor vehicle. See *Hedges v. Conder*, 166 N.W.2d 844; *Tiemeyer v. McIntosh*, 176 N.W.2d 819; and *Bernal v. Bernhardt*, 180 N.W.2d 437. In *Bernal*, at page 441, we noted:

"However, as legal writers in the field of accident reconstruction recognize dryness, smoothness and cleanness of the road surfaces, the kind of tread, condition of wear and inflation of the tires, the weight of the vehicle and percent of grade of the highway are important variables which affect stopping distance and must be considered by a witness asked to make an exact calculation of speed from a mathematical formula, *Hedges v. Conder*, supra, the foundation laid to qualify an officer by occupational training to express such opinion must show whether he knew and considered these variables. If he did not know or consider some of them, he must relate the details of his training, experience and experimentation which justify him in disregarding the factors ignored."

The complexity of mathematically determining the speed of a vehicle through accident reconstruction was also emphasized at page 440 of the *Bernal* opinion:

"When a collision occurs, however, the problem of estimating the speed of a vehicle mathematically is infinitely more complex. In such instances a portion of each vehicle's momentum is consumed in damaging or moving the other vehicle or object involved in the accident. The calculation of the impact velocity, therefore, requires a highly refined knowledge of kinetics, vector analysis, and strength of materials. Accordingly, the expertise required of the expert witness is corre-

spondingly greater." (citing 48 Iowa Law Review, pages 1058–1059.)

The plaintiff challenges the lack of consideration given several of the factors, listed in the former quotation, by Dr. Brown in reaching his conclusions. This contention basically raises the question of the scientific reliability of the conservation of momentum-vector analysis as applied by Dr. Brown in this case. If it can be shown that the analytical process by which the estimate of speed was derived is generally accepted by the scientific community, then the testimony should be admitted. Absent such a foundational showing, the evidence must be excluded. See *McCormick on Evidence* (2d ed.), § 13, p. 31; *People v. Zimmerman*, 385 Mich. 417, 189 N.W.2d 259, 283. What is at issue here is not the general expertise of the witness, but the competence of the process applied and thus the particular competence of the witness to testify. As we noted in *Tiemeyer v. McIntosh*, 176 N.W.2d 819, 824: "It is not enough that a witness be generally qualified in a certain area, he must also be qualified to answer the particular questions propounded. . . . The capacity to testify as an expert is in every case a relative one, i. e., relative to the topic about which the person is asked to make his statement." In light of the tension between the factors comprising the conservation of momentum-vector analysis and the factors which this court has considered important in the past, a showing of the scientific viability of the momentum-vector analysis in the vehicle collision context is a necessary precondition to the admission of such testimony.

We reach the above result after examining the reception given the momentum-vector analysis in other jurisdictions. Although there is support among the commentators, see Cook, *Speed Calculations and the Expert Witness*, 42 Nebraska Law Review 100 (1962), the judicial reception has been less than enthusiastic, largely due to the myriad of potential factors to be considered which may vary the result. In *Brugh v. Peterson*, 183 Neb. 190, 159 N.W.2d 321, 325, the court said:

"Professor Cook's determination of speed of the Peterson automobile in this case, including the impact, involved an application of the law of conservation of energy, the law of conservation of momentum, and the law of recovery. It was essentially a mathematical calculation in which it was necessary to determine a large number of factors and variables. Some were determined by experimentation. Others were determined by inspection of photographs taken at the scene of the accident. Others were determined by assumption.

"As an example, Professor Cook assumed that both drivers had no control over their vehicles after the impact. There was no direct evidence concerning this factor, a factor which could be of great significance because direction and distance traveled after the impact are of importance in the calculation made.

"The situation in this case is comparable to that which was presented in *Flory v. Holtz* (176 Neb. 531, 126 N.W.2d 686), supra. There we held that similar testimony by this same witness was properly excluded. The case points out that the foundation for the opinion was inadequate, that it depended in part upon inferences based upon assumptions, and that there were many unknown factors which might have influenced the result."

Similar conclusions were reached in *People v. Zimmerman*, 385 Mich. 417, 189 N.W.2d 259, 283; *Stein v. Ohlhauser*, 211 N.W.2d 737 (North Dakota); and *Logsdon v. Baker*, 366 F.Supp. 332 (D.C., District of Columbia).

In *Logsdon*, at page 336, of 366 F.Supp., the court said:

"In general, the factors which play a major role in speed reconstruction and which are most often relied upon by experts are skid marks, vehicle damage, vehicle characteristics, highway conditions, and vehicle position after impact."

In this case there were no skid marks, and the array of potential considerations, evidenced by the scope of the objections raised at trial and the factors previously listed by this court, leave a substantial question as to the reliability of the process used in estimating speed. Absent a foundational showing of general acceptance by the scientific community of the reliable nature of the conservation of momentum-vector analysis in the vehicular collision context, we cannot say that the opinion given amounted to more than conjectural speculation, although of a learned nature. We allude to the difficulties found by other jurisdictions only to highlight the necessity of establishing the scientific reliability of the process being applied. If the questions raised therein can be or have been answered to the satisfaction of the scientific community and the courts, then the expert opinion might be deemed properly admissible. Until these questions are satisfactorily answered, admission of such testimony constitutes an abuse of discretion. See *Bernal v. Bernhardt*, supra, at page 439, and *Hedges v. Conder*, 166 N.W.2d 844, 851–858.

After full consideration of the prejudice which may have resulted to the plaintiff due to the admission of the expert testimony of the speed of the DeMaio car, we conclude this case must be reversed. It is, therefore, reversed and the cause remanded for a new trial.

JUDGMENT OF COURT OF APPEALS VACATED AND CAUSE REVERSED AND REMANDED FOR A NEW TRIAL.

All Justices concur except McCORMICK, J., who dissents from division III and the result.

McCORMICK, Justice (dissenting).

I respectfully dissent from division III and the result.

As noted by the court, plaintiff's objection to Dr. Brown's opinion alleged the record did not contain evidence of certain facts which plaintiff contended were essential to his analysis. However, the record did contain substantial evidence of all facts which Dr. Brown said were necessary. Plaintiff did not allege that Dr. Brown's form of analysis lacked general acceptance in the scientific community. This is a different

issue than whether the factual foundation for the analysis existed. I would hold that plaintiff's objection did not raise the contention she now urges and upon which the court reverses. Therefore I believe the Court of Appeals was right in affirming the trial court.

We should reserve the question whether Dr. Brown's methodology is scientifically reliable for a case in which an appropriate objection is made so that the adversary is alerted to the issue and afforded an opportunity to attempt to meet the objection.