**STATE of Iowa, Plaintiff-Appellant,**

v.

**David R. MUSSO, Defendant-Appellee.**

**No. 64971.**

Court of Appeals of Iowa.

May 26, 1981.

Thomas J. Miller, Atty. Gen., and Thomas N. Martin, Asst. Atty. Gen., for plaintiff-appellant.

Robert A. Wright, Des Moines, for defendant-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER, and JOHNSON, JJ.

DONIELSON, Judge.

This is an interlocutory appeal by the State to seek review of the trial court's decision sustaining defendant's motion to suppress evidence of his blood tests in a prosecution for involuntary manslaughter. We reverse the ruling on the motion and remand to the trial court.

Our scope of review in this matter is limited to correction of errors at law. Iowa R.App.P. 4.

## I.

On November 25, 1979, an automobile driven by the defendant was involved in an accident. A passenger in the car was pronounced dead at the scene and the defendant was taken to the hospital for treatment. At the hospital, a police officer made a request in writing to a doctor to withdraw a sample of blood from the defendant. The doctor then asked the defendant if a blood sample could be taken and, according to the doctor, the defendant consented to the test (defendant testified at trial that he could not remember being asked for his consent). Defendant had not yet been placed under arrest for OMVUI or any other public offense.

On January 3, 1980, the defendant was charged by trial information with involuntary manslaughter in violation of section 707.5(1), The Code 1979. At a preliminary hearing, defendant filed a motion to suppress evidence of tests performed on his blood sample. The State resisted the motion and the motion was then overruled. However, the trial court later amended its ruling and sustained defendant's motion to suppress on the grounds that chapter 321B, The Code 1979 (setting forth the implied consent procedures to be followed after an OMVUI arrest) applied to the instant case and that the implied consent procedures had not been complied with in obtaining the blood sample. The State then filed an application for discretionary review, which was granted on May 23, 1980.

## II.

Section 321B.3, The Code 1979, requires that a police officer invoking the implied consent procedures make a written request to the arrested driver for permission to obtain a blood sample. The trial court sustained defendant's motion to suppress evidence of tests performed on his blood sample because the officer seeking consent had failed to make a written request to the defendant. The State contends, however, that the trial court erred in sustaining the motion to suppress on that ground because the provisions of chapter 321B are inapplicable where, as here, there has been no arrest for OMVUI at the time consent was requested.

We agree that chapter 321B is inapplicable where there has been no arrest for OMVUI at the time the request for consent is made. Section 321B.3, The Code 1979, clearly states that the implied consent procedures do not come into operation until the intoxicated person has been arrested for OMVUI ("[w]ithdrawal of . . . body substances . . . shall be administered . . . only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while under the influence of an alcoholic beverage"). This provision has been interpreted to mean that the foundational requirements of chapter 321B do not apply unless and until there has been an arrest. *State v. Richards*, 229 N.W.2d 229 (Iowa 1975); *see State v. Young*, 232 N.W.2d 535, 537 (Iowa 1975). *But see State v. DeBerg*, 288 N.W.2d 348 (Iowa 1980) (chapter 321B foundational requirements applied in prosecution for OMVUI although unconscious defendant was not arrested on the charge until after blood sample was taken). Moreover, although there is no direct holding that chapter 321B does not apply in the absence of an OMVUI charge, two recent decisions suggest this result. In *Henkel v. Heri*, 274 N.W.2d 317 (Iowa 1979), the supreme court held that the foundational requirements of chapter 321B do not apply in the context of *civil* litigation where the intoxication of the driver of a motor vehicle is at issue. Although the holding is limited to civil actions, the *Henkel* court's reference to "civil and criminal actions outside the scope of chapter 321B," *id.* at 322, and its statement that "the foundational requirements of chapter 321B should not be applied beyond the prosecution of individuals for operating a motor vehicle in an intoxicated state," *id.* at 319, clearly indicate that chapter 321B has no application in cases where the defendant has not been

charged with OMVUI. This is also the implication in *Lessenhop v. Norton*, 261 Iowa 44, 153 N.W.2d 107 (1967), where chapter 321B foundational requirements were held to be inapplicable in the context of a wrongful death action involving an allegedly intoxicated motorist. In so holding, the supreme court observed that

> [c]hapter 321B clearly relates to the authority to take blood tests when a person is suspected of driving while intoxicated, and provides no rules for admission of these tests into evidence in such cases as we have here.

*Id.* at 52, 153 N.W.2d at 112. This statement from *Lessenhop* was interpreted in *Henkel* to mean that chapter 321B requirements apply only to prosecutions of intoxicated motorists. *Henkel*, 274 N.W.2d at 321. For these reasons, we conclude that chapter 321B does not apply in the instant case, where the defendant had not been arrested for OMVUI (or any other public offense) at the time his consent was requested and has not been charged with OMVUI in connection with this incident.

Since chapter 321B has no application in this case and since defendant does not challenge the trial court's finding that he consented to the test, evidence of tests made on defendant's blood sample is admissible if the proper foundation was laid. It must be shown that the sample was taken by a duly authorized person using the proper sterile equipment, that it was properly labelled and preserved, and that it was given proper care and transportation. *Henkel*, 274 N.W.2d at 320 (quoting *Lessenhop*, 261 Iowa at 51, 153 N.W.2d at 111). Additionally, the person who processed the sample must be identified so as to give the opposing party the opportunity to cross-examine concerning the procedures used. *Id.* Since the trial court erred in applying chapter 321B to sustain defendant's motion to suppress evidence of his blood tests, we reverse that ruling and remand to determine whether the *Henkel-Lessenhop* foundational requirements were met.

REVERSED AND REMANDED.